McGILL, APPELLEE, *v.* McGILL, APPELLANT.

(No. 7344—Decided April 8, 1982.)

*Mr. Glen E. Mumpower,* for appellee.

*Mr. Richard G. Knostman,* for appellant.

BROGAN, J. Steven McGill, appellee, and Carlotta McGill, appellant, were married on July 20, 1968. One child, Khari, was born on December 2, 1972 as the issue of this marriage.

On November 13, 1974, appellee filed a complaint for divorce in the Court of Common Pleas of Montgomery County, Ohio. Pursuant to final judgment entered March 24, 1975 the court granted appellee's request for divorce. In addition, the court awarded custody of the parties' minor child to appellant, subject to reasonable visitation by appellee. Appellee was required to pay weekly child support payments of $20 commencing March 19, 1975 and increasing to $25 on March 1, 1976. The court also incorporated a separation agreement into its decree.

On May 23, 1975 appellant filed a motion for setting definite and certain visitation in light of the fact that she was going to move beyond the geographical boundaries of the continental United States, *i.e.,* Nassau, Bahamas. A similar motion was filed by appellee on May 27, 1975. On July 31, 1975 the court filed an "Agreed Order" giving appellee visitation privileges during June, July and August of each year and for an additional week during November, December or January of each year. The order also reduced the weekly child support payments slightly.

On May 25, 1977 appellee filed a motion for an order suspending child support

payments until visitation rights could be set up with the minor child. Notice of this motion was sent to appellant by registered air mail but was returned unclaimed. The court granted appellee's motion and suspended child support payments as of July 5, 1977.

On February 13, 1981 appellee filed a motion for an order to have appellant show cause why she should not be punished for contempt of court for failure to comply with the visitation obligations set forth in the "Agreed Order" filed July 31, 1975. A hearing was set for March 11, 1981.

Notice of the motion and hearing was sent, by certified mail, to appellant at an address in San Diego, California. Appellant received such notice on February 20, 1981. Counsel for appellant moved for a continuance and, in accordance therewith, the hearing was rescheduled for April 1, 1981. Appellant did not personally appear at this hearing, conducted by a referee.

The findings of the referee indicate that appellee had attempted unsuccessfully to see the minor child in November 1976, when appellant was in Montgomery County, Ohio with the child. Appellant also returned to this jurisdiction in January 1977, but left before a hearing could be held on the matter of visitation. Shortly thereafter, appellant moved from the Bahamas. Appellee had been unaware of appellant's whereabouts until January 1981, although he apparently had made repeated attempts to locate her.

The referee recommended that appellant be found in contempt, sentenced to ten days in jail and fined $500. She also recommended that the sentence and fine be suspended on the condition that appellant appear before the court for a review of the matter of visitation on June 15, 1981.

The court reviewed the referee's report and entered judgment adopting the referee's recommendations.

Appellant timely filed a notice of appeal and has set forth two assignments of error. The first such assignment is as follows:

"The trial court erred in finding appellant * * * in contempt of court and issuing a warrant for her arrest because the court had not first obtained personal service of summons on appellant."

Initially, contempt may be divided into two general classifications: direct and indirect. Although a precise distinction is unavailable, direct contempt essentially involves conduct in the actual or constructive presence of the court which obstructs the administration of justice. See R.C. 2705.01; *State* v. *Local Union 5760* (1961), 172 Ohio St. 75 [15 O.O.2d 133]; see, also, *In re Estate of Wright* (1956), 165 Ohio St. 15 [59 O.O. 37]. Conversely, indirect contempt involves behavior which is out of the presence of the court, but which also tends to obstruct the administration of justice. *In re Lands* (1946), 146 Ohio St. 589 [33 O.O. 80]; *Springfield Bd. of Edn.* v. *Ohio Assn. of Pub. Sch. Emp.* (May 26, 1978), Clark App. No. 1187, unreported.

R.C. 2705.02 inferentially designates certain acts as constituting indirect contempt. It must be noted, however, that such specifications are not necessarily controlling. The power to act in contempt proceedings is inherent in the courts and exists independently from express constitutional provisions or legislative enactment. *State* v. *Local Union 5760, supra;* *Hale* v. *State* (1896), 55 Ohio St. 210; see *State* v. *Kilbane* (1980), 61 Ohio St. 2d 201 [15 O.O.3d 221]; see, also, *Cincinnati* v. *Cincinnati Dist. Council 51* (1973), 35 Ohio St. 2d 197 [64 O.O.2d 129].

In accordance with the traditional definitions the failure to comply with court ordered visitation, as in this case, must be considered to constitute indirect contempt. Such failure also falls under the classification in R.C. 2705.02(A), which provides that:

"A person guilty of any of the follow-

ing acts may be punished as for a contempt:

"(A) Disobedience of, or resistance to, a lawful writ, process, order, rule, judgment, or command of a court or an officer;"

Thus, the statutory classification is accurate in this instance.

The concept of contempt must also be characterized as criminal or civil, depending upon the purposes for which sanctions are imposed by the court. As noted in *Brown* v. *Executive 200, Inc.* (1980), 64 Ohio St. 2d 250, 253-254 [18 O.O.3d 446]:

"While both types of contempt contain an element of punishment, courts distinguish criminal and civil contempt not on the basis of punishment, but rather, by the character and purpose of the punishment. * * * Punishment is remedial or coercive and for the benefit of the complainant in civil contempt. Prison sentences are conditional. The contemnor is said to carry the keys of his prison in his own pocket, *In re Nevitt* (C.A. 8, 1902), 117 F. 448, 461, since he will be freed if he agrees to do as ordered. Criminal contempt, on the other hand, is usually characterized by an unconditional prison sentence. Such imprisonment operates not as a remedy coercive in its nature but as punishment for the completed act of disobedience, and to vindicate the authority of the law and the court. * * *"

See *Shillitani* v. *United States* (1966), 384 U.S 364; *Gompers* v. *Bucks Stove & Range Co.* (1910), 221 U.S. 418; *In re Appropriation for 1979* (1980), 62 Ohio St. 2d 99 [16 O.O.3d 104]; *State* v. *Kilbane, supra; State* v. *Local Union 5760, supra; Beach* v. *Beach* (1955), 99 Ohio App. 428 [59 O.O. 187]; *Hayes* v. *Hayes* (1919), 11 Ohio App. 10.

The fact that imprisonment may occur does not automatically establish criminal contempt. Imprisonment which is intended to be remedial by coercing a party to do that which he has failed to do does not automatically lose its civil nature. See, *e.g., Gompers, supra; Benck-* *enstein* v. *Schott* (1915), 92 Ohio St. 29; *Beach* v. *Beach, supra.*

In the present case the primary purpose of the assessment of a sentence and fine against appellant was to provide incentive for compliance with the visitation policy set forth in the court's agreed order entered on July 31, 1975. Thus, it would appear that appellant's actions in this matter accurately could be classified as indirect civil contempt.

While more stringent due process protection may be essential in criminal contempt, due process must be observed in civil contempt proceedings as well. See *In re Green* (1962), 369 U.S. 689 [20 O.O.2d 422]; *Simpson* v. *Simpson* (1969), 19 Ohio App. 2d 167 [48 O.O.2d 272].

Clearly, an individual subject to contempt proceedings is entitled to adequate notice as well as an opportunity to be heard. See R.C. 2705.03. Where the notice is sufficient to apprise a party of the charges against her, thereby enabling her to prepare her defense, such notice generally will withstand objections as to content. Further, notice which is reasonably calculated to reach the individual alleged to be in contempt also will withstand objection. Despite the potential for imprisonment there is no requirement that such notice must be personally served upon the individual.

In domestic relations and related proceedings the court has continuing jurisdiction to enforce or re-examine its orders. Civ. R. 75(I) provides that in such cases "[t]he continuing jurisdiction of the court shall be invoked by motion filed in the original action, notice of which shall be served in the manner provided for the service of process under Rule 4 through Rule 4.6. * * *"

Regarding out-of-state service, Civ. R. 4.3(A) establishes in pertinent part as follows:

"Service of process may be made outside of this state, as provided herein, in any action in this state, upon a person who at the time of service of process is a

nonresident of this state or is a resident of this state who is absent from this state. The term 'person' includes an individual * * * who * * * has caused an event to occur out of which the claim which is the subject of the complaint arose, from the person's:

"* * *

"(8) Living in the marital relationship within this state notwithstanding subsequent departure from this state, as to all obligations arising for alimony, custody, child support, or property settlement, if the other party to the marital relationship continues to reside in this state."

As indicated by Civ. R. 4.3(B)(1) service may be accomplished by certified mail.

Thus, service of a motion to show cause why a party should not be held in contempt for failure to comply with court ordered visitation may be made by certified mail. See *Culberson* v. *Culberson* (1978), 60 Ohio App. 2d 304 [14 O.O.3d 265]; see, also, *Brown* v. *Brown* (1972), 31 Colo. App. 557, 506 P. 2d 386, affirmed in part, reversed in part (1974), 183 Colo. 356, 516 P.2d 1129; *Karpf* v. *Karpf* (1940), 260 App. Div. 701, 23 N.Y.Supp. 2d 745 (non-payment of alimony).

Appellant's first assignment of error is denied.

As her second assignment of error appellant asserts that,

"The trial court erred in finding appellant in contempt of court and in ordering a one month visitation for appellee because appellee is guilty of laches in failing to assert his visitation rights, provide support for, or show interest in the parties' minor child, over a period of several years."

"Laches" has been defined as the neglect to assert a right under such circumstances, and for such length of time, as when not induced by fraud or otherwise shown to be justified, will lead a court of equity to refuse its aid. *Russell* v. *Fourth National Bank* (1921), 102 Ohio St. 248.

The record in this case indicates that the delay in appellee's attempt to reestablish visitation was due to an inability to locate appellant, though diligent efforts to do so were made by appellee. Appellant has not refuted such findings.

Under the circumstances of this case the trial court reasonably could conclude that the equitable concept of laches was not appropriate.

Appellant's second assignment of error is denied.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

WILSON and SHERER, JJ., concur.

SHERER, J., retired, of the Second Appellant District, was assigned to active duty under authority of Section 6(C), Article IV, Constitution.