## In re PARKER.

[Cite as *In re Parker* (1995), 105 Ohio App.3d 31.]

Court of Appeals of Ohio,
Fourth District, Scioto County.

No. 94CA2256.

Decided June 26, 1995.

*James H. Banks,* for appellant.

Stephenson, Judge.

This is an appeal from a judgment entered by the Scioto County Court of Common Pleas finding Linda L. Parker, contemnor below and appellant herein, guilty of direct contempt of court and imposing a sentence of one year's incarceration in the Scioto County Jail together with a $5,000 fine. The following assignments of error are presented for our review:

I. "The trial court erred in finding contemnor, Linda Parker, in direct contempt and failing to afford her a hearing on the contempt charge."

II. "Assuming, *arguendo,* that the finding of contempt was properly made, the sentence of the trial court is unduly harsh, is in violation of law, and constitutes [an] abuse of discretion."

The record reveals the following facts pertinent to this appeal. There has, apparently, been some degree of previous belligerent contact between appellant and a resident common pleas judge, arising from prior cases heard in the judge's courtroom. On February 4, 1992, in case No. 92–CI–035, the judge filed an order directing that appellant not "come within 100 yards of this Judge, his home or family." It is also indicated that appellant was warned on several other occasions not to make any direct, *ex parte* contact with the judge.

However, in the early morning hours of June 23, 1994, appellant supposedly appeared at the judge's home and "began beating on the door, ringing the door bell, scratching and disfiguring the door to [the] Judge[']s home." By the time the judge had awoken, gotten to the front door and opened it, appellant had already been placed under arrest by the Police Department of New Boston, Ohio. A judgment entry signed by the judge was filed later that same day, without any notice whatsoever to appellant, finding her in contempt of court. The entry

further imposed a fine of $5,000 and, without benefit of an appearance in court, ordered her incarceration in the Scioto County Jail for a period of one year. This appeal followed.

We begin our analysis of this case with a short review of the law of contempt. "Contempt of court" is defined as the disobedience or disregard of a court order or a command of judicial authority. *Daniels v. Adkins* (June 3, 1994), Ross App. No. 93CA1988, unreported, at 3, 1994 WL 268263; *Johnson v. Morris* (Dec. 19, 1993), Ross App. No. 93CA1969, unreported, at 13, 1993 WL 524976. Contempt of court involves conduct which engenders disrespect for the administrator of justice or which tends to embarrass, impede or disturb a court in the performance of its function. *Denovchek v. Trumbull Cty. Bd. of Commrs.* (1988), 36 Ohio St.3d 14, 15, 520 N.E.2d 1362, 1363–1364; *Windham Bank v. Tomaszczyk* (1971), 27 Ohio St.2d 55, 56 O.O.2d 31, 271 N.E.2d 815, at paragraph one of the syllabus. The law of contempt is intended to uphold and ensure the effective administration of justice, secure the dignity of the court, and to affirm the supremacy of law. *Cramer v. Petrie* (1994), 70 Ohio St.3d 131, 133, 637 N.E.2d 882, 884. The power of the common pleas courts to punish contemptuous conduct is derived from its inherent authority, *Burt v. Dodge* (1992), 65 Ohio St.3d 34, 35, 599 N.E.2d 693, 694; *Zakany v. Zakany* (1984), 9 Ohio St.3d 192, 9 OBR 505, 459 N.E.2d 870, syllabus, as well as from statute. See, *e.g.,* R.C. 2705.01 and 2705.02.

There is a distinction between civil and criminal contempt. *ConTex, Inc. v. Consol. Technologies, Inc.* (1988), 40 Ohio App.3d 94, 95, 531 N.E.2d 1353, 1355; *Schrader v. Huff* (1983), 8 Ohio App.3d 111, 112, 8 OBR 146, 148, 456 N.E.2d 587, 588. Civil contempt exists when a party fails to do something ordered by the court for the benefit of an opposing party. *Pedone v. Pedone* (1983), 11 Ohio App.3d 164, 165, 11 OBR 247, 248, 463 N.E.2d 656, 657–658; *Beach v. Beach* (1955), 99 Ohio App. 428, 431, 59 O.O. 187, 188–189, 134 N.E.2d 162, 165–166. Punishment is remedial, or coercive, in civil contempt. *State ex rel. Henneke v. Davis* (1993), 66 Ohio St.3d 119, 120, 609 N.E.2d 544, 545. It is meant to enforce compliance with the court's orders.

By contrast, criminal contempt proceedings vindicate the authority of the legal system and punish the party who offends the court. *Scherer v. Scherer* (1991), 72 Ohio App.3d 211, 214, 594 N.E.2d 150, 152; *In re Skinner* (Mar. 22, 1994), Adams App. No. 93CA547, unreported, at 15, 1994 WL 93149. The sanction imposed for criminal contempt clearly operates as a punishment for the completed act of disobedience. *Brown v. Executive 200, Inc.* (1980), 64 Ohio St.2d 250, 254, 18 O.O.3d 446, 449, 416 N.E.2d 610, 613. This is the case in the cause *sub judice.* Although the court below is, undoubtedly, seeking to coerce appellant into complying with its restraining order in the future, the judgment of

contempt filed on June 23, 1994, was clearly in punishment for appellant's actions earlier that day. Thus, the contempt is criminal in nature.

Once the contempt power is classified as criminal, the contemnor is entitled to those rights and constitutional privileges afforded a defendant in a criminal action. See *Winkler v. Winkler* (1991), 81 Ohio App.3d 199, 202, 610 N.E.2d 1022, 1023–1024; *Schrader v. Huff* (1983), 8 Ohio App.3d 111, 112, 8 OBR 146, 148, 456 N.E.2d 587, 588. The most important of these are the contemnor's right to due process, *Winkler, supra,* 81 Ohio App.3d at 202, 610 N.E.2d at 1023–1024, which includes the rights of one charged with contempt to be advised of the charges against her and to have a reasonable opportunity to meet them by way of defense or explanation, as well as the chance to testify and to call other witnesses on her behalf. See *In re Yeauger* (1992), 83 Ohio App.3d 493, 497, 615 N.E.2d 289, 292; *Courtney v. Courtney* (1984), 16 Ohio App.3d 329, 334, 16 OBR 377, 382–383, 475 N.E.2d 1284, 1290–1291; see, also, *In re Oliver* (1948), 333 U.S. 257, 275, 68 S.Ct. 499, 508, 92 L.Ed. 682, 695. There is no indication in the record of the cause *sub judice* that appellant herein was afforded any of these protections.

There is yet another distinction to be made between direct and indirect contempt of court. See *In re Purola* (1991), 73 Ohio App.3d 306, 310, 596 N.E.2d 1140, 1142–1143; *McGill v. McGill* (1982), 3 Ohio App.3d 455, 456, 3 OBR 535, 536–537, 445 N.E.2d 1163, 1164–1165. A direct contempt is one committed in the presence of the court, whereas an indirect contempt is one committed outside its presence. *In re Lands* (1946), 146 Ohio St. 589, 595, 33 O.O. 80, 82–83, 67 N.E.2d 433, 437. This is an important distinction. A party charged with indirect contempt for violating an order outside the presence of the court must be afforded a hearing. R.C. 2705.03. Contemptuous actions within the presence of the court, however, may be summarily punished. R.C. 2705.01.

The judgment of the court below repeatedly states that appellant is being held in direct contempt of court. This was error. Appellant's alleged contemptuous actions were far removed, both in time and in location, from the courtroom. Although they were committed in the presence of the trial court judge, he was not (at that hour or in that place) conducting court or acting in his capacity as a judicial officer of the state of Ohio. It is well-settled law that actions are not summarily punishable under the law of direct contempt unless they impose an imminent threat to the administration of justice. See *In re Contempt of Rossman* (1992), 82 Ohio App.3d 730, 732, 613 N.E.2d 241, 242; *Cleveland v. Heben* (1991), 74 Ohio App.3d 568, 573, 599 N.E.2d 766, 769; *State v. Drake* (1991), 73 Ohio App.3d 640, 644, 598 N.E.2d 115, 118; *State v. Conliff* (1978), 61 Ohio App.2d 185, 189, 15 O.O.3d 309, 311–312, 401 N.E.2d 469, 473. It is readily apparent to us that the judge was operating under the mistaken belief

that appellant's contumacious actions could be summarily punished merely because they occurred in the judge's presence. Such summary punishment, however, would violate well-settled constitutional safeguards over a court's use of its direct contempt powers. Our colleagues on the Montgomery County Court of Appeals in the case of *In re Davis* (1991), 77 Ohio App.3d 257, 602 N.E.2d 270, explained this as follows:

" 'A court, or a judge at chambers, may summarily punish a person guilty of misbehavior in the presence of or so near the court or judge as to obstruct the administration of justice.'

"However, this power to punish summarily is limited in two ways.

" * * *

"Second, the nature or quality of the contumacious act must be such that the orderly and effective conduct of the court's business requires its immediate suppression and punishment. *In re Oliver* (1948), 333 U.S. 257, 68 S.Ct. 499, 92 L.Ed. 682. The particular conduct must create 'an open threat to the orderly procedure of the court' such that if 'not instantly suppressed and punished, demoralization of the court's authority will follow.' *Cooke v. United States* (1925), 267 U.S. 517, at 536, 45 S.Ct. 390, at 395, 69 L.Ed. 767, at 773. In authorizing exercise of the summary power to punish, the *Oliver* court 'gave no encouragement to its expansion beyond the suppression and punishment of the court disrupting misconduct which alone justified its exercise.' *Id.,* 333 U.S. at 274, 68 S.Ct. at 508, 92 L.Ed. at 695. Further, the limits of the contempt authority are, in general, 'the least possible power adequate to the end proposed.' *Id.,* quoting *Ex Parte Terry* (1888), 128 U.S. 289, 9 S.Ct. 77, 32 L.Ed. 405, citing *Anderson v. Dunn* (1821), 19 U.S. (6 Wheat.) 204, 5 L.Ed. 242.

"It seems clear that under the rules of *Cooke* and *Oliver* a summary proceeding is not authorized simply because the conduct constitutes direct contempt. Even if the external facts are clear because they took place in the presence of the judge, the effect of the contumacious conduct must create a 'need for speed' to immediately suppress the court-disrupting misbehavior and restore order to the proceedings. [Dobbs, Contempt of Court: A Survey (1971), 56 Cornell L.Rev. 183, 229]. Absent that need, an evidentiary hearing is required even though the contempt is 'direct.' " *Id.,* 77 Ohio App.3d at 263–264, 602 N.E.2d at 274.

There is no doubt in our minds that appellant's alleged actions were disturbing, vexatious and perhaps even costly for the judge and his family. However, they cannot be described as being "an imminent threat to the administration of justice," nor can they be described as needing an "immediate suppression" so as to maintain order in the courtroom. The law of direct contempt of court contemplates actions more closely tied, in time and place, to the courtroom and

the administration of the judicial function. Any contempt of court charge as a result of appellant's actions can be classified only as indirect contempt under the provisions of R.C. 2705.02(A). This would require that appellant be afforded a hearing pursuant to R.C. 2705.03. Again, as mentioned previously, there is no indication in the record that appellant was afforded such a hearing.

Having laid this foundation, we now turn to appellant's first assignment of error, wherein she argues that the court below was required to hold a hearing before finding her in contempt of court and that it erred in failing to do so. We agree. Appellant had a right to such a hearing both because of the criminal nature of these proceedings and because the alleged contemptuous acts took place outside the presence of the court. The failure to hold such a hearing amounts to reversible error. Accordingly, the first assignment of error is sustained and the judgment of the trial court is reversed. Appellant's second assignment of error is now rendered moot and will be disregarded pursuant to App.R. 12(A)(1)(c). This cause is remanded for further proceedings consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

PETER B. ABELE, P.J., and KLINE, J., concur.