OPINION.
Defendant-appellant Edward J. Felson appeals from the trial court's judgment finding him in direct contempt for erasing a diagram on a courtroom blackboard. The decisive issue is whether Felson's conduct occurred in the presence of the court, thus permitting the judge to summarily punish him under R.C. 2705.01. Because the record demonstrates that the trial judge had only learned of Felson's conduct from the prosecutor, the finding of direct contempt and the summary punishment were inappropriate.
Felson was present to defend a client in a bench trial on the morning calendar in the Hamilton County Municipal Courtroom of Judge Ralph E. Winkler, Jr. At the time, approximately fifty people were present in the courtroom. Although the record is unclear, it appears that the judge was on the bench handling other preliminary matters. Felson began erasing a map drawn on the blackboard. Also written on the blackboard, in three-inch letters circled in red, were the words "Do Not Erase." The map had been created for use in a jury trial that had carried over from the previous day. When the prosecutor observed Felson erasing the blackboard, she said, "Get out of here. Get Out." The transcript then indicates that there was an unexplained interlude of undetermined length. The next recorded exchange is the judge asking Felson for an explanation. Felson told the judge that he had apologized to the prosecutor, the bailiff, and the defendant. The judge held Felson in contempt, stating, "Your apology will be accepted after you pay your fine I will give you after trial."
At the court's afternoon session, the judge held a hearing without sworn testimony. Felson explained to the judge that he had not seen the message not to erase on the board, because four or five people had been standing in front of it. He said, "I had no intent to do anything wrong. I was trying to help speed things up because I was told there was a jury trial starting, thought it was getting ready to start." The prosecutor told the judge, "As far as the exhibit itself, it did take us approximately ten minutes to reconstruct what we could remember." The judge sentenced Felson to be confined for one day and to pay a $300 fine. The judge denied Felson's request for a stay and to set a bond. The order journalized by the judge states that Felson was punished for direct contempt in that his conduct, committed in the presence of the court, obstructed the administration of justice.
The supreme court has defined "contempt of court" as disobedience of a court's order. See Denovchek v. Bd. of Trumbull Cty. Commrs. (1988),36 Ohio St.3d 14, 15, 520 N.E.2d 1362, 1363. "It is conduct which brings the administration of justice into disrespect, or which tends to embarrass, impede or obstruct a court in the performance of its functions." Id. at 15, 520 N.E.2d at 1363-1364, citing Windham Bank v.Tomaszczyk (1971), 27 Ohio St.2d 55, 56, 271 N.E.2d 815, paragraph one of the syllabus. The power to punish contumacious conduct is inherent in a court, see id. at 15, 520 N.E.2d at 1364, as well as derived from statute. See, e.g., R.C. 2705.01 and 2705.02. The purpose of the court's contempt power is to ensure effective administration of justice, to secure the dignity of the court, and to affirm the supremacy of the law. See Cramer v. Petrie (1994), 70 Ohio St.3d 131, 133, 637 N.E.2d 882,884.
Contempt proceedings can be civil or criminal and are distinguished by the character of the punishment. See Brown v. Executive 2000, Inc.
(1980), 64 Ohio St.2d 250, 253, 416 N.E.2d 610, 613. In civil contempt, the punishment is remedial or coercive and for the benefit of the complainant. See id. Any prison term for civil contempt is conditional to obtain compliance with an order of the court. By contrast, criminal contempt involves a punitive sanction, usually an unconditional prison term or fine, designed to vindicate the authority of the court. SeeDenovchek v. Bd. of Trumbull Cty. Commrs., 36 Ohio St.3d at 16,520 N.E.2d at 1364. The sentence does not operate as a coercive remedy, "but as punishment for the completed act of disobedience, and to vindicate the authority of the law and the court." See Brown v. Executive 200, Inc.,64 Ohio St.3d at 254, 416 N.E.2d at 613 (citations omitted).
If the contempt is classified as criminal, then a further classification of direct or indirect contempt must be made. See In reLands (1946), 146 Ohio St. 589, 595, 67 N.E.2d 433, 437. "A direct contempt is one committed in the presence of or so near the court as to obstruct the due and orderly administration of justice, and punishment therefor may be imposed summarily without the filing of charges or the issuance of process." Id. "An indirect contempt is one committed outside the presence of the court but which also tends to obstruct the due and orderly administration of justice." Id.
Direct contempt allowing summary punishment is now defined as follows in R.C. 2705.01:
 A court or judge at chambers may summarily punish a person guilty of misbehavior in the presence of or so near the court or judge as to obstruct the administration of justice.
Here, it appears that the trial judge was mistakenly operating under the belief that because Felson had erased the blackboard while the judge was on the bench, his conduct was committed in the presence of the court and was summarily punishable. Courts closely scrutinize proceedings in which there is a departure from due-process guarantees out of concern for potentially "grave abuses." Accordingly, a summary proceeding is limited exclusively to punishment of court-disrupting conduct. See In re Oliver
(1948), 33 U.S. 257, 274, 68 S.Ct. 499, 508. As discussed by Judge Grady in In re Davis (1991), 77 Ohio App.3d 275, 263-263, 602 N.E.2d 270,274-275, the court's power to punish summarily is limited in two ways: (1) the contumacious conduct must be such that the determinative issues are known to the trial court personally, and (2) the nature or quality of the contumacious conduct must be such that the orderly conduct of the court's business requires immediate suppression and punishment.
If a judge has not personally observed the essential elements of the contempt and must depend on statements of others for knowledge of the essential elements, then due process requires that the accused be accorded notice and a hearing. See In re Oliver, 333 U.S. at 274-275,68 S.Ct. at 508. In Oliver, the Supreme Court said,
 [F]or a court to exercise the extraordinary but narrowly limited power to punish for contempt without adequate notice and opportunity to be heard, the court-disturbing misconduct must not only occur in the court's immediate presence, but the judge must have personal knowledge of it acquired by his own observation of the contemptuous conduct. This court said that knowledge acquired from the testimony of others, or even from the confession of the accused, would not justify conviction without a trial in which there was an opportunity for defense.
Id.
Although the trial judge in this case was on the bench, engaged in other court business at the time, the record does not demonstrate that the judge had personally observed Felson erase the board. In fact, the questions asked by the judge suggest that he was unaware of what Felson had done until the prosecutor brought it to his attention.
But even if Felson's conduct in erasing the blackboard is deemed to have taken place in the presence of the trial judge, for the judge to impose summary punishment would have required contumacious conduct to have posed an imminent threat to the administration of justice. See In reParker (1995), 105 Ohio App.3d 31, 36, 663 N.E.2d 671, 674. The conduct would have had to have created "an open threat to the orderly procedure of the court, necessitating the immediate suppression of the disruptive conduct." Cooke v. United States (1925), 267 U.S. 517, 536,45 S.Ct. 390, 395; see In re Davis, 77 Ohio App.3d at 263, 602 N.E.2d at 274. The judge's election to defer Felson's punishment until later in the afternoon indicates that the situation did not require immediate suppression of the conduct to restore order to the court proceedings. Felson's act of erasing the map on the blackboard was indeed collateral to the proceedings in both his client's bench trial and the unrelated jury trial, as neither was then in progress. Direct contempt contemplates actions more closely tied to the administration of justice than mere disobedience of the message "Do Not Erase."
We express no view as to whether Felson's conduct was contumacious. Instead, we hold that Felson's conduct can, at most, be classified only as indirect contempt, for which he is entitled to the constitutional safeguards afforded a criminal defendant. See Brown v. Executive 200,Inc., 64 Ohio St.3d at 252, 416 N.E.2d at 612; see, also, In re Parker,105 Ohio App.3d at 35, 663 N.E.2d at 674. These are the usual due-process guarantees providing an accused the rights to be advised of the charges, to have a reasonable opportunity to meet the charges at a meaningful hearing, to testify, to call other witnesses, and to be represented by counsel. See R.C. 2705.03; see, also, In re Davis,77 Ohio App.3d at 264-265, 602 N.E.2d at 275.
Felson's first assignment of error is sustained, the judgment of the trial court is reversed, and this case is remanded to the trial court for any further proceedings it may wish to initiate consistent with the foregoing decision. The second assignment of error is made moot by our ruling on the first assignment of error. See App.R. 12(A)(1)(c).
 _________________ Gorman, Judge.
 Doan and Hildebrandt, JJ., concur.