OPINION
{¶ 1} Plaintiff-appellant, James V. Herold, appeals and defendant-appellee, Lisa N. Herold, cross-appeals from the February 9, 2004 judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, finding defendant in contempt for violating the court's order to liquidate child support arrearages owed to plaintiff.
 {¶ 2} Plaintiff and defendant were divorced in 1985. Plaintiff was awarded custody of the party's two minor children, for whom defendant was ordered to pay child support to plaintiff.
 {¶ 3} On October 28, 1999, plaintiff filed a motion for contempt and attorney fees, asserting defendant failed to pay him child support as the court previously ordered. In a judgment entered July 17, 2000, the court found defendant in contempt and sentenced her to 30 days incarceration. The court suspended the sentence upon condition that defendant purge her contempt by paying $5,403 to plaintiff for child support arrearages, attorney fees and costs of the proceedings (collectively, "arrearages"). The court ordered defendant to make payments to plaintiff at a rate of $216.67 per month.
 {¶ 4} On February 7, 2001, plaintiff filed a second motion for contempt, together with a motion for enforcement and a request for attorney fees. Plaintiff contended that defendant failed to substantially pay the amount ordered in the July 17, 2000 judgment and created a new arrearage of $1,455.86. A hearing on the motion was held before a magistrate on September 25, 2001. On October 16, 2001, the magistrate issued a decision, adopted by the trial court in a judgment entered the same day, finding defendant guilty of contempt and sentencing her to 30 days in jail, suspended upon defendant purging her contempt by paying $216.67 per month toward the accrued arrearage, which the court noted was $6,035.50 as of September 25, 2001. The amount included an award of attorney fees to plaintiff for prosecuting the February 7, 2001 motion.
 {¶ 5} On December 5, 2001, the trial court enforced 20 days of the 30-day sentence previously imposed upon defendant for contempt. Defendant served the 20 days in jail.
 {¶ 6} On January 17, 2003, plaintiff filed (1) a third motion for contempt for defendant's continued failure to pay the arrearages as ordered, and (2) a motion for enforcement of "the prior jail sentence against the Defendant for failing to obey the Order of this Court." In each motion, plaintiff requested an award of costs, attorney fees, and wages plaintiff lost for attending court proceedings relating to the motions.
 {¶ 7} After holding several hearings on the motions, the trial court issued its written decision on February 9, 2004. The court denied plaintiff's motion for enforcement of sentence, determining its enforcement of the 20-day jail term upon defendant in December 2001 disposed of sentences previously imposed upon defendant.
 {¶ 8} With regard to the pending motion for contempt, the court found that defendant had not substantially complied with the court's purge order. Rather, from November 2001 through September 2003 defendant had paid $2,939, leaving an arrearage of $3,356.76. The court further noted, however, that beginning in October 2003, $221.50 would be withheld each month, for payment to plaintiff, from a social security disability benefit defendant received due to her inability to work, and $221.50 would continue to be withheld each month until the arrearages owed to plaintiff were liquidated.
 {¶ 9} The court further determined defendant had been unable to maintain steady full-time or part-time employment due to bipolar personality disorder, but "based upon the fact Defendant did not raise her bipolar personality disorder as a defense until [plaintiff filed his contempt motion in] 2003, Defendant could not rely upon said personality disorder as a defense to non-compliance" with the court's purge order. The court thus found defendant to be "technically" in contempt and imposed upon her a 30-day sentence, which it promptly suspended. The court denied plaintiff's request for lost wages and attorney fees.
 {¶ 10} Plaintiff appeals, assigning the following errors:
I. The court erred in finding that the magistrate imposed the exact same sentence for two separate contempt citations filed more than a year apart under circumstances where the contemnor failed to purge herself of the contempts.
II. The court erred in finding that the defendant had served the days imposed by the magistrate on both the first contempt citation and the second contempt citation when the second sentence of contempt was imposed during the period while the motion to enforce the first sentence was still being heard.
III. The court erred in admitting the deposition testimony of doctor bipin desai over the objection of the plaintiff.
IV. The court erred in failing to award attorneys fees for the various motions by finding that since the plaintiff maintained employment and was able to pay an attorney that an award of reasonable attorneys fees was unnecessary due to the bipolar conditions of the defendant.
V. The court erred in not enforcing the sentence imposed upon the defendant simply because she has a bipolar condition.
VI. The court erred in failing to withdraw from the case pursuant to counsel's request for recusal based upon the fact that the court exhibited a clear bias in favor of individuals with a bipolar condition rendering the judge unable to afford due process and equal protection to the rights and claims of the plaintiff.
Defendant assigns the following error on cross-appeal:
THE RECORD DOES NOT SUPPORT THE FINDING OF CONTEMPT.
 {¶ 11} Plaintiff's first two assignments of error are interrelated and will be addressed jointly. Together they assert that in resolving plaintiff's January 17, 2003 "Motion for Enforcement of Prior Jail Sentence Against the Defendant," the trial court had no reasonable basis for concluding that its December 5, 2001 judgment entry enforcing a 20-day jail term upon defendant disposed of both the July 17, 2000 and October 16, 2001 sentences issued against defendant for her contempt. Plaintiff argues the sentence issued in the October 2001 contempt order was completely separate from and in addition to the sentence imposed in the July 2000 contempt order because the second contempt order (1) was issued a year after the first contempt order, (2) was based upon different facts, and (3) did not state that its sentence was concurrent with the sentence previously issued. Thus, plaintiff asserts, although the 20-day jail term defendant served pursuant to the court's December 5, 2001 judgment entry may have disposed of one of defendant's prior sentences for contempt, the other contempt citation remained open to sanctions that should have been enforced in the 2003 proceedings.
 {¶ 12} A trial court's decision in contempt proceedings will not be disturbed on appeal absent an abuse of discretion. Stateex rel. Ventrone v. Birkel (1981), 65 Ohio St.2d 10, 11; In reAyer (1997), 119 Ohio App.3d 571, 575. See, also, Wharton v.Wharton (Sept. 15, 1987), Franklin App. No. 87AP-211, citingMacKenzie v. MacKenzie (1911), 11 C.C. (N.S.) 494, affirmed without opinion (1913), 89 Ohio St. 441; Lentz v. Lentz (1924),19 Ohio App. 329, 334 (holding a refusal to punish for contempt is generally a matter wholly within the discretion of the trial court).
 {¶ 13} The trial court determined that the December 5, 2001 judgment entry enforcing a 20-day jail term upon defendant, with 10 additional days suspended, did not specify whether the punishment resolved one or both of the suspended sentences imposed upon defendant in the judgment entries filed July 17, 2000 and October 16, 2001. The court noted, however, that plaintiff's pending motion for enforcement attached and incorporated by reference only the single October 16, 2001 judgment entry, which adopted the magistrate's decision that issued only one 30-day suspended sentence upon plaintiff's February 7, 2001 motion for contempt and enforcement. The trial court concluded that the 20 days defendant served in jail resolved both of the prior suspended sentences, and thus was dispositive of plaintiff's January 17, 2003 motion for enforcement because no sentence remained to be enforced when the motion was filed.
 {¶ 14} Given the broad discretion accorded to the trial court in deciding matters, including punishment, related to contempt, we cannot say the court abused its discretion in deciding that the 20-day jail term defendant served in December 2001 for failure to pay child support arrearages resolved both prior sentences for contempt imposed upon defendant, thereby leaving no sentence to be enforced against defendant at the time plaintiff's January 17, 2003 motion for enforcement was filed. Plaintiff's first and second assignments of error are overruled.
 {¶ 15} In his third assignment of error, plaintiff asserts the trial court erred in admitting Dr. Bipin Desai's deposition testimony over plaintiff's objection. Dr. Desai is a board-certified psychiatrist who began treating defendant upon her admission to Marion General Hospital in January 2001 for bipolar personality disorder, depression, suicidal tendencies, and other conditions. Plaintiff contends Dr. Desai's testimony concerning his diagnosis and treatment of defendant for severe bipolar personality disorder was inadmissible under Evid.R. 703 and 705 because when Dr. Desai testified he neither had reviewed nor had with him all of the medical records pertaining to defendant's hospitalization and treatment for bipolar disorder.
 {¶ 16} Evid.R. 705 provides, in pertinent part, that an "expert may testify in terms of opinion or inference and give his reasons therefore after disclosure of the underlying facts or data." Evid.R. 703 explains that "[t]he facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by him or admitted in evidence at the hearing." The Ohio Supreme Court has held "the requirement of Evid.R. 703 has been satisfied" when "an expert bases his opinion, in whole or in major part, on facts or data perceived by him[.]" State v. Solomon (1991), 59 Ohio St.3d 124, syllabus.
 {¶ 17} In this case, Dr. Desai did not present all of defendant's medical and hospital records to support his testimony before he rendered his expert opinion that defendant suffered from bipolar disorder. However, in accordance with Evid.R. 703, Dr. Desai's testimony disclosed the facts and data perceived by him that formed the basis for his diagnosis and treatment of defendant and thus provided adequate support for his opinion. Id.; State v. Cooper (2000), 139 Ohio App.3d 149, 168, appeal not allowed, 90 Ohio St.3d 1468 (determining a doctor's disclosure of facts, without admission of medical records, constitutes an adequate basis to testify as to his expert opinion). While Dr. Desai's failure to recall every factor that lead to his diagnosis and treatment of defendant for bipolar disorder may have affected the weight the trier of fact accorded his testimony, such failure to recall did not affect its admissibility. Vetter v. Hampton (1978), 54 Ohio St.2d 227,230.
 {¶ 18} Accordingly, because Dr. Desai's testimony adequately supported his opinion that defendant has bipolar personality disorder, the trial court did not abuse its discretion in admitting Dr. Desai's deposition testimony into evidence. Evid.R. 103(A); Wightman v. Consolidated Rail Corp. (1999),86 Ohio St.3d 431, 437. Plaintiff's third assignment of error is overruled.
 {¶ 19} Next, we consider plaintiff's sixth assignment of error, in which plaintiff asserts the trial court erred in denying plaintiff's June 17, 2003 motion for recusal. In this appeal, as in his motion for recusal in the trial court, plaintiff asserts the common pleas court judge assigned to this case had a duty to recuse herself because she exhibited a clear bias in favor of individuals, such as defendant, with a bipolar condition.
 {¶ 20} This court lacks authority to consider issues of disqualification. Pursuant to R.C. 2701.03, the Chief Justice of the Ohio Supreme Court, or his designee, has exclusive jurisdiction to determine a claim that a common pleas court judge is biased and prejudiced. Beer v. Griffith (1978),54 Ohio St.2d 440, 441; State v. Scruggs, Franklin App. No. 02AP-621, 2003-Ohio-2019, at ¶ 15; Wardeh v. Altabchi,158 Ohio App.3d 325, 2004-Ohio-4423, at ¶ 21.
 {¶ 21} The record discloses that before the trial court issued its decision denying plaintiff's motion for recusal, plaintiff filed an affidavit with the Ohio Supreme Court pursuant to R.C. 2701.03(B) seeking disqualification, on the basis of bias and prejudice, of the judge presiding in this case. On September 18, 2003, the Chief Justice of the Ohio Supreme Court found plaintiff's affidavit of disqualification not well-taken and denied plaintiff's claim.
 {¶ 22} Because this court lacks jurisdiction over this issue and the Chief Justice of the Ohio Supreme Court has decided plaintiff's disqualification claim pursuant to R.C. 2701.03, plaintiff's sixth assignment of error is dismissed.
 {¶ 23} We next address the single assignment of error raised in defendant's crossappeal, as our resolution of it disposes of plaintiff's remaining assignments of error.
 {¶ 24} Defendant asserts the record does not support the trial court's February 9, 2004 finding of contempt against defendant, which was based on her failure to comply with the court's October 16, 2001 order to liquidate approximately $6,000 in child support arrearages owed to plaintiff. Defendant contends the portion of the court's February 9, 2004 judgment finding defendant in contempt should be reversed because defendant presented sufficient proof establishing that due to severe bipolar personality disorder and other conditions she was unable to work and therefore unable to comply with the court's October 16, 2001 order to pay the arrearages owed to plaintiff. Defendant argues that although the trial court properly permitted defendant to present evidence to support her inability-to-comply defense, the court then erroneously concluded, after the evidence was presented, that defendant could not rely on her defense because it was not raised before plaintiff filed his 2003 motion for contempt.
 {¶ 25} Contempt of court is the disobedience or disregard of an order or judgment of a court. In re Parker (1995),105 Ohio App.3d 31. Failure to pay court-ordered child support constitutes civil contempt. See R.C. 2705.031; R.C. 2705.02(A); Tucker v.Tucker (1983), 10 Ohio App.3d 251, 252; Boraggina v. Boraggina
(Mar. 30, 2001), Lucas App. No. L-99-1272. Civil contempt occurs where a sanction is imposed to coerce compliance with the court's order or to compensate for losses sustained by the party for whose benefit the underlying order was made. Pugh v. Pugh
(1984), 15 Ohio St.3d 136, 140, citing McComb v. JacksonvillePaper Co. (1949), 336 U.S. 187, 191, 69 S.Ct. 497, 499.
 {¶ 26} In a civil contempt proceeding based on failure to pay court-ordered child support, the complainant must prove by clear and convincing evidence that the defendant violated an order of the court to pay child support. The complainant, however, is not required to prove that the defendant's disregard of the court order was willful or intentional. Pugh, at 140; Dressler v.Dressler, Warren App No. CA2002-08-085, 2003-Ohio-5115.
 {¶ 27} In this case, defendant conceded that she did not fully comply with the court's October 16, 2001 order to pay approximately $6,000 in child support arrearages to plaintiff. As a defense, defendant presented evidence that, through no fault of her own, she was unable to comply with the court's order to liquidate the arrearages owed to plaintiff because (1) she was unable to work during the compliance period at issue due to severe bipolar personality disorder and other conditions, and (2) she did not have control over the arrearage payments made to plaintiff from monthly social security disability benefits defendant received.
 {¶ 28} It is well-established that once a defendant's failure to pay court-ordered child support has been sufficiently proven, the defendant may raise inability to comply as an affirmative defense to contempt. Pugh, at 140; Courtney v. Courtney
(1984), 16 Ohio App.3d 329, 334, citing State ex rel. Cook v.Cook (1902), 66 Ohio St. 566; In re Purola (1991),73 Ohio App.3d 306, 313, appeal dismissed and jurisdictional motion overruled (1992), 63 Ohio St.3d 1428. The defendant bears the burden of satisfying the court that, through no fault of his or her own, the defendant lacked the financial ability to comply with the court's order. Id.; Rinehart v. Rinehart (1993),87 Ohio App.3d 325, 328; Moore v. Moore, Montgomery App. No. 19110, 2002-Ohio-3652.
 {¶ 29} Here, defendant appropriately raised her inability to comply as an affirmative defense in response to plaintiff's January 17, 2003 motion for contempt. Pugh; Courtney. In support of her defense, defendant was entitled to present and to rely upon evidence showing why she did not make the arrearage payments the court ordered and why she should not be held in contempt. Id. Severe bipolar personality disorder was merely one of the reasons defendant presented to explain why she was unable to work and therefore financially unable to comply with the court's order. To require defendant to raise her affirmative defense before a contempt charge was filed against her, based on a possibility that such a charge might possibly be made, would result in the affirmative defense being premature, although defendant could have presented her reasons for noncompliance as support for a motion to modify the existing child support order before contempt charges were filed.
 {¶ 30} Further, plaintiff has demonstrated no prejudice resulting from defendant's raising the affirmative defense that she suffered from severe bipolar disorder, as plaintiff was afforded ample opportunity to cross-examine defendant and her treating physician with regard to her claim. We conclude the trial court erred as a matter of law in precluding defendant from relying on evidence concerning bipolar personality disorder in support of her affirmative defense. Nonetheless, because the trial court allowed the evidence to be presented before it precluded defendant from relying on it, we are able to consider the merits of the defense.
 {¶ 31} Defendant presented uncontroverted evidence that due to severe bipolar personality disorder and other conditions she had been unable to work during the compliance period, beginning with the filing of the court's order in October 2001 and ending with the final hearing in October 2003 on plaintiff's third contempt motion. Dr. Desai testified by way of deposition that in January 2001 he diagnosed defendant with severe bipolar personality disorder, depression, and alcohol dependence, all of which he determined to be life-long conditions requiring life-long treatment. Dr. Desai testified that due to defendant's conditions and despite treatment, she had been unable to hold a parttime or full-time job during the compliance period at issue and to a reasonable degree of medical certainty would continue to be unable to maintain regular employment in the future because of the conditions. Dr. Desai testified he assisted defendant in applying for social security disability benefits in August 2001, and the Social Security Administration subsequently approved disability benefits for defendant based on her inability to work because of her conditions. According to the record, defendant was awarded $559 per month in social security disability benefits in December 2001 due to her inability to work.
 {¶ 32} In addition to evidence that defendant was unable to work to pay plaintiff the arrearages owed, defendant presented undisputed evidence that she had at least two child support orders in effect against her during the compliance period at issue. One child support order, unrelated to this case, directed defendant to make $259 in monthly current child support payments for her minor children from another relationship ("the Hutchison children"). The order at issue in this case directed defendant to make monthly payments to plaintiff of $216 plus poundage for child support arrearages owed to plaintiff for children from the instant parties' relationship ("the Herold children"). The Herold children had turned 18 years of age and were emancipated sometime before the October 16, 2001 purge order was issued. Because the child support order for the Hutchison children involved minors, it had payment priority over the trial court's order at issue here for child support arrearages on behalf of the Herold children.
 {¶ 33} The parties agree the total amount that could be lawfully withheld from defendant's monthly social security benefit was limited. According to the record, administrative regulations capped the amount of withholding permitted from a social security recipient's monthly benefit at 65 percent, thus requiring that recipients receive at least 35 percent of their monthly social security benefit. As a result, each month defendant personally received $195, which equaled 35 percent of her $559 benefit.
 {¶ 34} Applying the payment priority and withholding cap established by law, the Child Support Enforcement Agency ("CSEA") first withheld $259 as support for the Hutchison children from defendant's $559 monthly social security benefit, and then, after reserving $195 for defendant, CSEA could withhold a maximum of only $106 each month to pay toward plaintiff's arrearages, notwithstanding the trial court's order that plaintiff was to be paid arrearages at the rate of about $216 per month plus poundage.
 {¶ 35} Also impacting defendant's personal ability to pay the court-ordered arrearages is uncontroverted evidence that in September 2002 defendant received custody of one of her children, a 16-year-old minor who was not a subject of either of the child support orders. Defendant testified she never paid nor received child support for the child.
 {¶ 36} Further complicating matters, the record reflects that CSEA continued to withhold support for one of defendant's children after the child turned 18 years old in June 2002 and was no longer entitled to child support. The record indicates that, despite defendant's efforts to correct the situation, the matter was not finally resolved until mid-2003. When defendant received reimbursement for the support payments that had been wrongfully withheld for the emancipated child, she used the vast majority of the money to make a lump sum payment of $1,000 toward the arrearages she owed plaintiff. In October 2003, CSEA finally began withholding $221.50 each month from defendant's social security benefit to pay plaintiff's arrearages in accordance with the court's order; the arrearages were anticipated to be liquidated approximately 16 months thereafter.
 {¶ 37} The record thus clearly establishes that during the compliance period at issue, through no fault of her own, defendant financially was unable to comply with the court's October 16, 2001 order to liquidate the approximately $6,000 child support arrearage owed to plaintiff. Defendant was medically diagnosed and administratively determined to be unable to work. The $559 monthly social security benefit defendant was awarded was subject to multiple child support orders, a cap on withholding established by law, and CSEA's erroneous withholding of support for an emancipated child. The record indicates that, despite the many limitations on her income, defendant managed to pay plaintiff approximately 60 percent of the total arrearage at the time the court entered its judgment, with the remaining arrearages to be liquidated through automatic withholding of $221.50 from defendant's monthly social security benefit beginning in October 2003. Significantly, the record does not indicate that defendant obstructed the payment of arrearages to plaintiff. Rather, the record shows she made diligent efforts to pay plaintiff the arrearages due. Based on the circumstances in this case, the trial court abused its discretion in finding defendant guilty of contempt. Accordingly, defendant's single assignment of error presented on cross-appeal is sustained.
 {¶ 38} Our decision that defendant is not guilty of contempt renders moot plaintiff's fourth assignment of error, in which plaintiff asserts the trial court erred in failing to award attorney fees to plaintiff based upon the court's finding of contempt against defendant. Plaintiff's fourth assignment of error will not be addressed.
 {¶ 39} In his fifth assignment of error, plaintiff asserts the trial court erred in imposing a sentence of only 30 days upon defendant for the contempt finding at issue here and further erred by suspending the sentence. Because we conclude that defendant is not guilty of contempt as the trial court found in its February 9, 2004 judgment, the 30day sentence imposed upon defendant and then suspended by the court must be vacated. Plaintiff's fifth assignment of error is overruled.
 {¶ 40} Having overruled plaintiff's first, second, third, and fifth assignments of error, rendering moot plaintiff's fourth assignment of error, having dismissed plaintiff's sixth assignment of error for lack of this court's jurisdiction to decide the issue, and having sustained defendant's single cross-assignment of error, we reverse the portion of the trial court's February 9, 2004 judgment finding defendant in contempt, vacate the sentence imposed on defendant for contempt, and affirm the judgment in all other respects.
Judgment affirmed in part and reversed in part; sentencevacated.
Klatt and McCormac, JJ., concur.
McCormac, J., retired, of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), ArticleIV, Ohio Constitution.