OPINION
{¶ 1} Appellant Lawrence Davis was convicted in the Mahoning County Court of Common Pleas on five counts of drug trafficking. He is now appealing his conviction based on alleged preindictment delay, improper rulings on evidence, and failure to permit new trial counsel to be appointed. Furthermore, Appellant generally attacks the sufficiency of the evidence and questions why the trial court did not sustain a motion for a new trial. Additionally, Appellant appeals the imposition of 50 extra days of jail time after he was held in direct contempt by the trial judge. None of these arguments are meritorious. Appellant raises one final issue involving both a constitutional and statutory challenge to the state's failure to produce at trial all the lab technicians who tested the five cocaine samples that form the primary evidence against him. Appellant argues that the state violated the Confrontation Clause of the Sixth Amendment by refusing to allow him to confront the lab technicians at trial. Appellant also asserts that the state violated R.C. 2925.51(C), which requires the prosecutor to produce at trial the forensic lab technicians who analyzed the cocaine samples. Appellant made the appropriate pretrial demand to have the technicians testify at trial, and without the technicians, neither the lab reports nor any other evidence at trial established crucial elements of the crime, including the accurate weight of each cocaine sample. Based on this statutory error, counts one and four of the indictment were not proven at trial and the convictions on those counts are reversed and the corresponding sentences vacated, reducing Appellant's overall sentence by three years. The remaining aspects of the trial court's judgment are affirmed. *Page 3 
 HISTORY OF THE CASE {¶ 2} On March 3, 2005, Appellant was indicted on five counts of drug trafficking. Each count was based on a separate purchase of cocaine by a confidential informant and arranged by the Mahoning Valley Drug Task Force. The drug buys occurred on June 6, June 25, July 31, and August 2, of 2003, and March 25, 2004. These correspond to counts one through five of the indictment. Each count was charged under R.C. 2925.03(A)(1). Counts one and three were fourth degree felonies, as it was alleged that more than five grams but less than ten grams of cocaine were sold. Counts four and five were third degree felonies, alleging that more than ten grams but less than one hundred grams of cocaine were sold. Count two was a second degree felony, alleging that more than ten grams but less than one hundred grams of cocaine were sold, and also alleging that the drug sale took place within one thousand feet of a school. There was a forfeiture specification attached to count three.
 {¶ 3} Appellant was arrested on September 27, 2005. On October 5, 2005, Appellant filed a motion pursuant to R.C. 2925.51(C) demanding that the state produce at trial John Pflugh or any other person who analyzed and signed any laboratory report containing an analysis of the controlled substances involved in the case. The trial court sustained the motion on October 11, 2005.
 {¶ 4} On October 7, 2005, Appellant filed a motion to dismiss on the grounds that the state failed to bring him to trial in a timely fashion. This motion was overruled on December 5, 2005. *Page 4 
 {¶ 5} Appellant was released on a $50,000 bond on October 11, 2005.
 {¶ 6} Jury trial began on December 8, 2005. Immediately prior to trial, Appellant asked the court to appoint new counsel. Appellant admitted to the trial judge that his counsel was doing a good job, but he decided it was in his best interests to obtain new counsel. (Tr., pp. 9-10.) He said he talked to his mother and friends and they agreed that he should get new counsel. (Tr., pp. 11-12.) The judge overruled the motion for new counsel.
 {¶ 7} At trial, the state called a variety of police officers to testify about each controlled drug purchase. Each drug purchase was done through a confidential informant. For each purchase, the police gave the confidential informant a sum of money, and the informant arranged a location with Appellant where they were to meet to complete the cocaine purchase. The police searched the informant and his vehicle prior to each drug purchase, placed a recording wire on him, and observed the drug transaction. The police searched the informant again after the transaction ended.
 {¶ 8} The state introduced as evidence five lab reports identifying each cocaine sample and its weight. The state called two forensic chemists to testify about the lab reports. Barbara DiPietro, a scientist at the Bureau of Criminal Identification and Investigation lab in Richfield, Ohio, examined the sample corresponding to count five of the indictment. John Pflugh, a chemist with Tri-State Laboratories in Youngstown, Ohio, signed the reports for the remaining four samples. It was revealed at trial that Mr. Pflugh did not actually test or oversee the testing of *Page 5 
the samples labeled as State's Exhibits 4 and 7, and which correspond to counts one and four of the indictment.
 {¶ 9} The state rested its case in the early afternoon of December 8, 2005, and Appellant moved to dismiss the charges pursuant to Crim.R. 29. The court overruled the motion. Appellant's counsel then stated that he had no evidence to present and rested his case. The court attempted to address the jury at 3:10 p.m., but Appellant had left the building and could not be found. The judge did not want to proceed without Appellant's presence. The parties eventually agreed on a course of action. They decided that the judge and a court reporter would go to the jury room without counsel, so that the judge could tell the jurors to go home for the evening. They agreed that the judge would not mention that Appellant had fled from the trial and could not be found.
 {¶ 10} A warrant was issued for Appellant's arrest. He voluntarily appeared at court the next morning. He was arrested in the courthouse and it was agreed that contempt proceedings were to be postponed until after the jury reached its verdict. It was at this point in the proceedings Appellant requested he be permitted to testify in his defense. Counsel noted that this was against his advice, but agreed that Appellant had a right to testify if he so desired. The court reopened the evidentiary portion of the case and allowed Appellant to testify. The jury convicted Appellant on all five counts that same day.
 {¶ 11} On December 12, 2005, the court held a contempt hearing and proceeded to sentencing. The court found Appellant in direct contempt of court and *Page 6 
imposed 50 days in jail, to be served prior to any prison sentence that might be imposed in the case. Moving to the sentencing hearing, the court sentenced Appellant to one year in prison on count one, five years on count two, one year on count three, two years on count four, and two years on count five, to be served consecutively, for an aggregate prison term of eleven years. The court filed its sentencing entry on December 14, 2005. On December 21, 2005, Appellant filed a motion for a new trial, which was overruled on December 23, 2005. Appellant filed this timely appeal on December 30, 2005. Appellant's assignments of error will be addressed out of order to facilitate our analysis.
 ASSIGNMENT OF ERROR NO. 3 {¶ 12} "Defendant was denied Due Process of Law when the court overruled defendant's motion to dismiss by reason of pre-indictment delay."
 {¶ 13} Appellant asserts that the rights of due process and speedy trial, governed by the state and federal constitutions as well as by statute, apply to preindictment delay in prosecuting a criminal case. Appellant contends that his indictment was delayed 21 months from the date of the first controlled drug buy. The first buy took place on June 6, 2003, and the indictment was filed on March 3, 2005. Appellant himself admits, though, that the drug purchase on June 6, 2003, did not involve direct contact between himself and the state's confidential informant, and presented a weak case. Additional controlled drug buys were carried out on June 25, July 31, and August 2, of 2003, and on March 25, 2004. The last buy took place less than one year prior to the filing of the indictment. *Page 7 
 {¶ 14} Appellant's argument fuses together many different theories and fact patterns in order to leave a general impression that his speedy trial rights or due process rights were violated. In sorting through the various arguments that appear under this assignment of error, we are mindful that very different rules apply depending on which statutory or constitutional rights are being asserted, and based on whether the delay occurs before or after the defendant is indicted. The vast majority of cases dealing with speedy trial rights are concerned with delay between the time of issuing the indictment and actually bringing the case to trial. These cases do not apply to Appellant's situation, because he is arguing that the preindictment delay in prosecuting him violated some type of statutory or constitutional right.
 {¶ 15} In Appellant's assignment of error he asserts, in part, a due process violation. The United States Supreme Court has determined that the due process clauses of the Fifth and Fourteenth Amendments have a limited role to play in protecting against oppressive preindictment delay. United States v. Lovasco (1977), 431 U.S. 783, 789,97 S.Ct. 2044, 52 L.Ed.2d 752. Furthermore, "proof of prejudice is generally a necessary but not sufficient element of a due process claim * * *." Id. at 790, 97 S.Ct. 2044, 52 L.Ed.2d 752. Appellee correctly points out that Appellant has not even alleged, much less proven, that he was prejudiced by any delay in issuing the indictment.
 {¶ 16} Appellant cites State v. Luck (1984), 15 Ohio St.3d 150,472 N.E.2d 1097, for the proposition that charges may be dismissed on due process grounds based on excessive preindictment delay. Luck held that, "[a]n unjustifiable delay *Page 8 
between the commission of an offense and a defendant's indictment therefor, which results in actual prejudice to the defendant, is a violation of the right to due process of law under Section 16, Article I
of the Ohio Constitution and the Fifth and Fourteenth Amendments to the United States Constitution." Id. at paragraph two of the syllabus. The delay between the crime and the indictment in the Luck case was fifteen years. In those fifteen years, two key witnesses died, one key witness could not remember any material details, and all prior tape-recorded interviews of witnesses were lost. The Luck Court found that the delay in prosecution was due to prosecutorial negligence and errors in judgment. The Court determined that the defendant's case was severely prejudiced by the delay and that the state could raise no good reason for this delay. The Court upheld the dismissal of the charges.
 {¶ 17} It is clear from the Luck case, which relied on a prior holding by the United States Supreme Court in Lovasco, supra, 431 U.S. 783,97 S.Ct. 2044, 52 L.Ed.2d 752, that without proof of prejudice, meaning something which adversely affects Appellant's ability to defend himself at trial, there is no due process violation for preindictment delay in prosecution. Appellant tries to interject the concept of "presumptive prejudice" in his argument, but this idea is taken from speedy trial caselaw, and not from due process analysis. Presumptive prejudice has been found to occur on speedy trial grounds when there is a delay of one year or more in bringing a case to trial after the defendant has been indicted or arrested for the crime. See State v. Triplett (1997),78 Ohio St.3d 566, 569, 679 N.E.2d 290, citing Doggett v.United States (1992), 505 U.S. 647, 112 S.Ct. 2686, 120 L.Ed.2d 520. The *Page 9 
prejudice referred to in the speedy trial cases is due to a defendant's incarceration while awaiting trial, and the general disruption in his life caused by being under the cloud of indictment.Triplett, 78 Ohio St.3d at 568. Prejudice, under due process analysis, occurs where a defendant is unable to present a defense at trial due to the loss or decreased effectiveness of evidence. "[T]he notion of presumptive prejudice, applies only to postindictment delays which implicate the Sixth Amendment right to a speedy trial, and has no application to preindictment delays." State v. Collins (1997),118 Ohio App.3d 73, 77, 691 N.E.2d 1109. Appellant has not provided any authority establishing that presumptive prejudice exists in the context of due process rights which may be impacted by preindictment delay in prosecuting a case.
 {¶ 18} Appellant further argues that the delay between the date his first crime was committed and the date of the indictment violated his speedy trial rights, both under Ohio statutes and under the federal and state constitutions. The Ohio Supreme Court has recently reiterated its holding that statutory speedy trial rights under R.C. 2945.71 do not apply until a person has been formally charged with or arrested for a crime. State v. Azbell, 112 Ohio St.3d 300, 2006-Ohio-6552,859 N.E.2d 532. The delay that Appellant is focused on occurred prior to his indictment and arrest. Therefore, he cannot rely on a statutory right to speedy trial. Hence, Appellant is limited to arguing that this alleged delay ran afoul of his state and federal constitutional speedy trial rights.
 {¶ 19} Turning to the allegations that Appellant's constitutional speedy trial rights were infringed, we must first point out that the United States Supreme Court *Page 10 
ruled in United States v. Marion (1971), 404 U.S. 307, 313,92 S.Ct. 455, 30 L.Ed.2d 468, that the speedy trial guarantee under theSixth Amendment to the United States Constitution has no applicability to preindictment delays. The only remaining question, then, is whether Appellant has raised claims under the Ohio Constitution.
 {¶ 20} When reviewing any type of constitutional speedy trial rights, whether state or federal, the basic test used was established inBarker v. Wingo (1972), 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101. InBarker, the defendant was arrested and indicted for murder in 1958, but was not brought to trial until 1963. Barker held that there was no constitutional basis for setting any type of fixed time period of months or years to determine whether a speedy trial violation had occurred.Barker came up with a balancing test for analyzing constitutional speedy trial claims which consists of four factors: 1) the length of the delay; 2) the reason for the delay; 3) how and when the defendant asserted his right to a speedy trial; and 4) whether the defendant suffered prejudice from the delay. Id. at 530-532. The Supreme Court of Ohio has also adopted this test to determine if an individual's speedy trial rights have been denied. State v. Selvage (1997), 80 Ohio St.3d 465,687 N.E.2d 433; State v. Behymer (1992), 80 Ohio App.3d 791, 792, 610 N.E.2d 1126.
 {¶ 21} Obviously, Appellant's situation is nothing like the situation in Barker, which involved postindictment and postarrest delays in bringing a case to trial. Appellant argues, though, that Ohio courts have recognized that preindictment delays in prosecuting a case may also trigger a Barker-type of speedy trial analysis under *Page 11 
the Ohio Constitution, citing State v. Meeker (1971) 26 Ohio St.2d 9,55 O.O.2d 5, 268 N.E.2d 589.
 {¶ 22} In rebuttal, Appellee correctly argues that, pursuant toBarker, one of the things that a defendant must prove is that he suffered prejudice from the speedy trial delay. Appellant neither alleged nor proved he suffered any prejudice from the delay in issuing the indictment. Therefore, it appears that he cannot rely onBarker or related cases to establish a speedy trial violation under the Ohio Constitution.
 {¶ 23} Further, the rule in Ohio is that a defendant may only assert preindictment speedy trial rights if the state has actually initiated its criminal prosecution or has issued an official accusation prior to indictment. Selvage, supra, 80 Ohio St.3d at 466, 687 N.E .2d 433;Luck, supra, 15 Ohio St.3d at 153, 472 N.E.2d 1097. In the record before us, it appears that Appellant was not prosecuted for, or accused of, the crimes now under review prior to his indictment on March 3, 2005. Once again, the facts of Appellant's case do not indicate any speedy trial violation. See, e.g., State v. Miller (Mar. 23, 2001), 4th Dist. No. 99CA2527.
 {¶ 24} Appellant contends that his situation is similar to that which occurred in Meeker, supra, 26 Ohio St.2d 9, 55 O.O.2d 5, 268 N.E.2d 589, but his reliance on Meeker, is unwarranted. It is true thatMeeker did open the door to constitutional challenges of preindictment delay in prosecution. Meeker held that: "Considering the basic purposes of the constitutional right to a `speedy trial,' we conclude that such constitutional guarantees are applicable to unjustifiable delays in commencing prosecution as well as to unjustifiable delays after indictment." Id. at 16-17. Meeker *Page 12 
is one of the few Ohio cases that actually links speedy trial rights with preindictment delays. Meeker, though, is a fairly old case, and many subsequent cases have affected the practical effect of theMeeker holding.
 {¶ 25} For example, in the Marion case cited earlier, the United States Supreme Court established that, under the federal constitution, there are no speedy trial rights regarding preindictment delays.Marion was decided on December 20, 1971, several months afterMeeker was decided, on March 31, 1971. Since Marion is the later case, and since Ohio's speedy trial caselaw tends to mirror the speedy trial rights allowed under federal law, the Meeker holding was substantially undermined nine months after it was issued.
 {¶ 26} Furthermore, the Luck case, also cited above, decided almost a decade later than Meeker, causes us to question whether Meeker has any continuing validity in light of the holding in Marion. The Luck Court expressly limited the application of Meeker: "We agree thatMeeker was not nullified in its entirety by Marion, but we believe that in light of Marion and its progeny, our holding in Meeker is viable only insofar as its application is limited to cases that are factually similar to it." Luck, supra, 15 Ohio St.3d at 153, 472 N.E.2d 1097.
 {¶ 27} It is clear that Appellant's situation is not factually similar to Meeker. In Meeker, the defendant engaged in conduct in April of 1963 which would have constituted four separate crimes. In June, 1963, the state prosecuted him for one crime; armed robbery. The defendant pleaded guilty to a lesser charge, was convicted and sentenced. He initiated post-conviction proceedings in an attempt to *Page 13 
withdraw his plea, and in 1969 he was successful. The conviction was vacated and remanded for further proceedings. The state then added three new charges to the indictment, based on the same criminal conduct that occurred in 1963 giving rise to the original armed robbery charge. These additional charges were challenged on speedy trial grounds.Meeker held that:
 {¶ 28} "Where a defendant, at the same time and place in April 1963, commits acts which would constitute four separate crimes, and where the state with knowledge thereof elects in June 1963 to charge the defendant with but one of such crimes, those counts in an indictment returned in April 1969, charging the defendant with the other three crimes, are violative of the defendant's right to a speedy trial. Such delay in prosecution is not legally justified by the fact that defendant pleaded guilty in 1963 to a lesser included offense under the original charge, was sentenced to penal confinement thereunder, and in 1969 secured a postconviction order voiding his 1963 guilty plea." Meeker, supra,26 Ohio St.2d at 17.
 {¶ 29} In the instant case, the facts are not remotely similar toMeeker. The prosecutor did not initially prosecute Appellant for one crime, and then years later bring additional charges based on the same conduct. In fact, the opposite happened. The prosecutor in the instant case waited until it had built a case based on a series of criminal actions, and then brought the charges all at once. Appellant was not subject to lengthy criminal proceedings prior to being informed of the full charges against him. He was not incarcerated while the case was being built against him. In short, *Page 14 
his situation is nothing like Meeker, and he is not entitled to the type of speedy trial rights described in Meeker.
 {¶ 30} Appellant also raises a slightly different argument, alleging that the delay between the filing of his indictment and his eventual arrest triggered another type of speedy trial violation. Appellant relies on Doggett v. United States (1992), 505 U.S. 647, 112 S.Ct. 2686,120 L.Ed.2d 520, in support. In Doggett, the United States Supreme Court held that the delay between the indictment and arrest violated the defendant's right to a speedy trial. Id., at 648-649, 112 S.Ct. at 2689,120 L.Ed.2d at 526. Doggett involved an eight-and-one-half-year delay between the defendant's indictment and his arrest, in which the government's attempt to promptly serve the indictment had been unsuccessful because the defendant had fled the country. The delay inDoggett was so long that the court held it was presumptively prejudicial, triggering a complete Barker analysis.
 {¶ 31} Appellant's reliance on Doggett is misplaced. Appellant concedes that presumptive prejudice only begins to arise when the delay between indictment and arrest approaches one year. Doggett,505 U.S. at 652, 112 S.Ct. 2686. In the instant case, only six months elapsed between the filing of the indictment and Appellant's arrest. This amount of time does not begin to approach the time frame in which presumptive prejudice applies. If the theory of presumptive prejudice does not apply, Appellant cannot succeed in establishing a speedy trial violation because he has not alleged or proven any type of prejudice. *Page 15 
 {¶ 32} Appellant has combined all of the above-mentioned theories and fact patterns into one catch-all argument. After dissecting the individual strands of his argument, it is clear that no due process or speedy trial violation occurred in this case, and Appellant's third assignment of error is overruled.
 ASSIGNMENT OF ERROR NO. 5 {¶ 33} "The trial court erred in failing to adequately inquire into the Defendants [sic] motion for substitution of counsel."
 {¶ 34} On the morning of Appellant's trial, he submitted a motion for substitution of counsel. (Tr., p. 2.) The trial judge addressed the motion while dealing with all the usual last minute motions and procedural issues prior to the commencement of trial. Appellant addressed the court and stated: "I feel that Mr. Conn [Appellant's counsel] has done a good job, but I don't feel that he's in my best interest to represent me at this time." (Tr., pp. 9-10.) Appellant apparently was not satisfied with the results of the plea bargain negotiations, and blamed counsel for their failure. After hearing from Appellant and Mr. Conn, the court concluded that Appellant was engaging in delaying tactics and the motion was overruled. Appellant believes there is some type of reversible error in the trial court's actions.
 {¶ 35} Appellee correctly points out that there is no absolute right to one's choice of counsel in a criminal case: "[a]n indigent defendant has no right to have a particular attorney represent him and therefore must demonstrate `good cause' to warrant substitution of counsel."United States v. Iles (C.A.6, 1990), 906 F.2d 1122, 1130, quoted inState v. Cowans (1999), 87 Ohio St.3d 68, 72, 717 N.E.2d 298. *Page 16 
"Good cause" in this context means that counsel has a conflict of interest, or that there is a complete breakdown in communication or an irreconcilable conflict. State v. Pruitt (1984), 18 Ohio App.3d 50, 57,480 N.E.2d 499.
 {¶ 36} It should also be noted that the constitutional right to counsel does not guarantee a meaningful relationship between a defendant and counsel. Morris v. Slappy (1983), 461 U.S. 1, 103 S.Ct. 1610,75 L.Ed.2d 610.
 {¶ 37} If the motion for new counsel is found to be unsubstantiated or unreasonable, the trial judge may deny the motion. State v. Deal (1969),17 Ohio St.2d 17, 46 O.O.2d 154, 244 N.E.2d 742, syllabus. In evaluating a request for substitute counsel, the court must balance, "the accused's right to counsel of his choice [against] the public's interest in the prompt and efficient administration of justice." United States v.Jennings (C.A.6, 1996), 83 F.3d 145, 148. The court may deny the motion if it finds the motion was made simply to delay the trial, or was not made in good faith. The trial court's decision is reviewed for abuse of discretion. Cowans, 87 Ohio St.3d at 73, 717 N.E.2d at 304, citingIles, 906 F.2d at 1130, fn. 8.
 {¶ 38} Appellant did not give any substantial reason for desiring new counsel, and in fact, told the trial judge that Mr. Conn, "has done a good job." (Tr., p. 9.) The main reason Appellant wanted new counsel was that he had talked to his mother and brother, who apparently told him that he needed new counsel. (Tr., p. 12.) This is not the type of situation that warrants a new appointment of counsel, particularly on the eve of trial. The trial court acted within its discretion in overruling the motion. Appellant's fifth assignment of error is without merit. *Page 17 
 ASSIGNMENT OF ERROR NO. 2 {¶ 39} "Defendant was denied Due Process of Law and his rights under the Sixth Amendment Confrontation Clause of the Federal Constitution and like provisions of the Ohio Constitution when the Court allowed States Exhibits 4 7 to be admitted into evidence and further erred when it allowed the testimony of John Pflugh as to the weight of the substance identified in said exhibits."
 {¶ 40} Appellant argues that he had a right under the confrontation clause of the Sixth Amendment to question all the lab technicians who tested and weighed the cocaine samples sent to Tri-State Laboratories in Youngstown. Appellee did call two of them to testify concerning the cocaine test results. Appellant is concerned with the four lab reports signed by Mr. John Pflugh. Pflugh testified on cross-examination that he signed all four lab reports, but that he personally tested or observed only two of the four cocaine samples. (Tr., p. 96.) Mr. Pflugh did not perform or supervise the tests found in Report 03-0931 (State's Exhibit 4) and Report 03-1291 (State's Exhibit 7).
 {¶ 41} Appellant contends that the Sixth Amendment gives an accused the right to be confronted with the witnesses against him, which should include the right to confront the lab technicians who performed the actual testing. Appellant believes that two test reports that were not based on John Pflugh's personal knowledge should have been excluded from evidence because the lab technicians who performed the tests did not appear at trial. Appellant concludes that his convictions on counts one and four must be reversed. *Page 18 
 {¶ 42} Appellant does not cite all the appropriate caselaw, but it is clear that he is raising an argument under Crawford v. Washington
(2004), 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177, which held that testimonial hearsay evidence is inadmissible at a criminal trial unless the defendant is afforded an opportunity to cross-examine the declarant, and unless the declarant is unavailable to appear at trial.Crawford is a landmark case that overturned the prior established rule allowing such hearsay testimony if it met certain firmly rooted hearsay exceptions or it possessed, "particularized guarantees of trustworthiness." See Ohio v. Roberts (1980), 448 U.S. 56, 65-66,100 S.Ct. 2531, 65 L.Ed.2d 597. Appellant contends that the real declarants in State's Exhibits 4 and 7 were the technicians who actually tested the cocaine samples. Appellant argues that he had a right to confront those technicians in addition to Mr. Pflugh.
 {¶ 43} As Appellee correctly points out, one of the crucial questions under Crawford is whether the disputed evidence is "testimonial," because if it is not testimonial, it does not encroach on the confrontation clause. Examples of testimonial evidence are: prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and police interrogations. Crawford, 124 S.Ct at 1367.Crawford has been reaffirmed and further interpreted by Davis v.Washington (2006), 547 U.S., 126 S.Ct. 2266, 165 L.Ed. 224, which held that 911 calls do not violate the confrontation clause because they are not testimonial evidence.
 {¶ 44} There is currently considerable debate about whether cocaine test results and similar lab reports are testimonial with regard to aCrawford analysis. *Page 19 
State supreme courts have issued rulings which fall into both sides of the issue. State v. Caulfield (Minn. 2006), 722 N.W.2d 304, 310
(laboratory report identifying substance as cocaine is testimonial);State v. Forte (N.C. 2006), 629 S.E.2d 137, 143 (laboratory report on DNA test not testimonial because such reports are routine, neutral and not inherently subject to manipulation or abuse); Commonwealth v.Verde (Mass. 2005), 827 N.E.2d 701, 705 (laboratory report of chemical analysis on cocaine admissible under Crawford because the test is neither discretionary nor based on opinion); State v. March (Mo. 2007),216 S.W.3d 663 (cocaine lab report contains testimonial hearsay, and failure of lab technician to testify violated the confrontation clause). There has not been any definitive ruling in Ohio regarding whether lab reports that are prepared specifically to support the state's prosecution of a criminal case are testimonial and, therefore, raise a confrontation clause issue.
 {¶ 45} Certain types of reports have been found to be non-testimonial in Ohio. See State v. Craig, 110 Ohio St.3d 306, 2006-Ohio-4571,853 N.E.2d 621, ¶ 88 (concluding that an autopsy report and related test findings are not testimonial and do not violate the confrontation clause); State v. Stahl, 111 Ohio St.3d 186, 2006-Ohio-5482,855 N.E.2d 834 (emergency room exam report containing victim's statement was not testimonial).
 {¶ 46} Some appellate cases, though, have raised the possibility that lab reports that are, "prepared with an eye to a specific prosecution and an essential element of the offense," may be testimonial and may be subject to a confrontation clause analysis. Granville v. Pumphrey, 5th Dist. No. 2006CA00054, 2007-Ohio-251, *Page 20 
¶ 12. The Third Appellate District has specifically held that cocaine test reports are testimonial evidence, and that a defendant has a right to confront the lab technicians who perform tests on the cocaine.State v. Smith, 3rd Dist. No. 1-05-39, 2006-Ohio-1661, ¶ 16. Since controlled substances are tested specifically to prosecute people who have committed drug crimes, the test reports appear to be materially different than some other types of evidence produced in the ordinary course of business, such as 911 records or emergency room reports.
 {¶ 47} Appellant would like us to resolve this constitutional question regarding lab reports and the confrontation clause. It is not necessary, though, for us to decide the constitutional issue in reaching our decision in this case because Appellant has raised a related statutory matter regarding lab reports. R.C. 2925.51(A) provides that chemical test reports shall be prima facie evidence of the "content, identity, and weight" of controlled substances under the following conditions:
 {¶ 48} "(A) In any criminal prosecution for a violation of thischapter or Chapter 3719. of the Revised Code, a laboratory report from the bureau of criminal identification and investigation, a laboratory operated by another law enforcement agency, or a laboratory established by or under the authority of an institution of higher education that has its main campus in this state and that is accredited by the association of American universities or the north central association of colleges and secondary schools, primarily for the purpose of providing scientific services to law enforcement agencies and signed by the person performingthe analysis, stating that the substance that is the basis of the alleged offense has been weighed and *Page 21 
analyzed and stating the findings as to the content, weight, and identity of the substance and that it contains any amount of a controlled substance and the number and description of unit dosages,is prima-facie evidence of the content, identity, and weight or theexistence and number of unit dosages of the substance." (Emphasis added.)
 {¶ 49} Appellant argues that John Pflugh signed the lab reports in State's Exhibits 4 and 7, even though he did not perform the tests that form the basis of the report or even supervise this testing. Appellant contends that the reports should be excluded as prima facie evidence because they were not signed by the persons who performed the analysis, as required by R.C. 2925.51(A).
 {¶ 50} Appellant further contends that he properly followed the procedure in R.C. 2925.51(C) to demand that the lab technicians appear at trial. R.C. 2925.51(C) states:
 {¶ 51} "The report shall not be prima-facie evidence of the contents,identity, and weight or the existence and number of unit dosages of thesubstance if the accused or the accused's attorney demands the testimonyof the person signing the report, by serving the demand upon the prosecuting attorney within seven days from the accused or the accused's attorney's receipt of the report. The time may be extended by a trial judge in the interests of justice." (Emphasis added.)
 {¶ 52} In rebuttal, Appellee contends that Appellant has waived review of this issue by failing to raise it at trial. Appellee is mistaken, because Appellant has followed the correct statutory procedure found in R.C. 2925.51 for preserving this *Page 22 
matter for review. Appellant submitted his demand that the state produce the lab technicians at trial. Once such a demand is made, it is up to the state to produce the lab technicians or prove the identity, weight, and existence of the controlled substances with evidence other than simply relying on the lab report.
 {¶ 53} R.C. 2925.51(C) essentially forces the prosecutor to produce all the lab technicians at trial to explain and validate the lab results, because once the defendant invokes R.C. 2925.51(C), a lab report is no longer regarded as prima facie evidence in and of itself. If a lab report cannot be treated as prima facie evidence, the prosecutor must prove the state's case by relying on additional evidence, i.e., the testimony of the lab technician who tested the controlled substance, to establish its case. The lab report may be used along with the other evidence, but the statute clearly mandates that the state cannot simply rely on the lab report to establish the elements of the crime once a defendant makes a demand pursuant to statute. A defendant is not required to make any further objections at trial to challenge the prima facie value of the lab report because the moment that the R.C. 2925.51(C) demand is filed, the state is unable to simply rely on the lab report to establish its prima facie case. R.C.2925.51(A) gives the lab report prima facie authority, and R.C.2925.51(C) takes it away in certain circumstances. When a defendant files a demand pursuant to R.C. 2925.51(C), this demand serves as the defendant's objection and preserves appellate review.
 {¶ 54} Appellant made a demand on October 5, 2005, for the state to produce at trial John Pflugh "or any other person, who analyzed and signed any laboratory *Page 23 
report". When he filed this demand, it had the automatic effect of invalidating those lab reports as prima facie evidence. "Prima facie" in this context means, "on the face of it; so far as can be judged from first disclosure[.]" Black's Law Dict. (6th Ed.1990) 1189. In other words, these lab reports cannot be used by themselves to establish the state's case. Furthermore, the very fact that a defendant is permitted to demand that the lab technicians appear at trial puts the onus on the prosecutor to actually produce those witnesses for trial. It does not appear that the failure by the state was deliberate, here. The record reflects that the prosecutor may have been deceived as much as the defendant as to John Pflugh's role in testing the cocaine at issue, because Pflugh signed lab reports that were not his to sign. Whether or not the prosecutor was deceived is irrelevant for the purposes of the statute, however. Appellant made his demand for any and all persons who both analyzed the cocaine samples and who signed the reports, and the state did not produce all of the required lab technicians at trial. The burden here was on the state, not Appellant, who followed the letter of the statute and was given false or incomplete information prior to trial about who analyzed the cocaine samples.
 {¶ 55} It has generally been held that the state must strictly comply with R.C. 2925.51 in order to have lab reports admitted as prima facie evidence. State v. Smith, 3rd Dist. No. 1-05-39, 2006-Ohio-1661, ¶ 20;State v. Bethel, 5th Dist. No. 2002AP0010, 2002-Ohio-5347, ¶ 9;State v. Reese (1978), 56 Ohio App.2d 278, 382 N.E.2d 1193 (1st Dist.). Without having the lab technicians present to authenticate and verify the information in the lab reports at issue in State's Exhibits 4 and 7, the *Page 24 
state cannot establish crucial elements of its case, such as the identity and weight of the substance. Without those essential facts, the record does not contain sufficient evidence to convict Appellant for the type of drug trafficking involved in this case.
 {¶ 56} Mr. Pflugh admitted that he did not perform or even supervise two of the four test results that he signed. (Tr., p. 96.) Mr. Pflugh was not willing to state with any degree of certainty that the information recorded in State's Exhibits 4 and 7 was accurate, including the weight of the alleged cocaine. (Tr., p. 95.) Mr. Pflugh testified that there was no set policy as to calibrating the balance used to weigh cocaine. (Tr., p. 96.) He could only state that he, "probably weighed two of them that my initials are on." (Tr., p. 96.) He admitted that he was only taking someone else's word for all of the information on the other reports. (Tr., p. 96.)
 {¶ 57} Mr. Pflugh also admitted that his lab misplaced evidence at times:
 {¶ 58} "Q. Has at any time there been any problems with getting cases mixed up?
 {¶ 59} "A. No. We have misplaced a couple bags here and there but not on a routine.
 {¶ 60} "Q. Bags have been misplaced?
 {¶ 61} "A. Bags have been misplaced.
 {¶ 62} "Q. Evidence lost?
 {¶ 63} "A. Yes." (Tr., p. 97.)
 {¶ 64} Mr. Pflugh further testified that the Youngstown Police Department has stopped using his lab to do forensic testing. (Tr., p. 102.) *Page 25 
 {¶ 65} This testimony raises questions as to the accuracy of the test results, the general reliability of the lab, and the state's compliance with R.C. 2925.51. Obviously, the cocaine lab report was used as the primary evidence establishing crucial elements of the crime, including the proof that the substance was cocaine and how much it weighed. The exact amount of cocaine determines the degree of each felony, and thus, is a vital element of the state's case. Based on Mr. Pflugh's admissions at trial, it does not appear that the state established the essential elements of drug trafficking for counts one and four, which related to the evidence provided in State's Exhibits 4 and 7. Because this record reflects reversible error based on the statutory violation, it is unnecessary at this time for us to determine whether cocaine lab reports are subject to the confrontation clause. Thus, Appellant's second assignment of error is sustained and the convictions arising from counts one and four in the indictment are reversed and vacated.
 ASSIGNMENT OF ERROR NO. 6 {¶ 66} "The Court denied the Defendant due process of law by allowing into evidence the alleged contraband as the chain of custody is irreparably flawed."
 {¶ 67} Appellant argues that the confidential informant failed to identify any of the state's exhibits, and for that reason, the chain of custody of the evidence was not established and could not be used against him at trial. Although Appellant does not specifically mention it, he did object to the cocaine evidence on the grounds that there was a break in the chain of evidence. Appellant's argument is not well-taken. *Page 26 
 {¶ 68} The parties agree that the chain of custody of evidence is part of the authentication process governed by Evid.R. 901, and that the state has the burden of establishing the chain of custody when it is in dispute. State v. Barzacchini (1994), 96 Ohio App.3d 440, 457,645 N.E.2d 137. "The state need only establish that it is reasonably certain that substitutions, alteration or tampering did not occur." State v.Moore (1973), 47 Ohio App.2d 181, 183, 353 N.E.2d 866. "[B]reaks in the chain of custody go not to the admissibility of evidence, but to the weight afforded it." State v. Blevins (1987), 36 Ohio App.3d 147, 150,521 N.E.2d 1105.
 {¶ 69} There is no absolute requirement that a confidential informant identify drugs that were purchased in order for those drugs to be used as evidence in a drug trafficking case. State v. McFarland (Jan. 15, 1993), 5th Dist. No. CA-92-7. In the instant matter, Officer Joseph Rolla testified that he took two of the cocaine purchases from the confidential informant and placed them in evidence bags. (Tr., pp. 21 1ff.) Officer Robert Patton testified that he took two other cocaine purchases from the informant. (Tr., pp. 131 ff.) Officer Brian Simmons testified that he took the remaining cocaine purchased by the confidential informant. (Tr., p. 176.) The officers gave extensive testimony regarding the manner in which they searched the informant and his vehicle prior to each drug transaction, about their constant surveillance of the drug purchases, and about what happened after the drugs were purchased, including their own actions in putting the drug evidence into small bags and marking them. It is not clear how the confidential informant could have added anything substantial to the officers' authentication testimony, or how he could have *Page 27 
identified each specific bag of cocaine prior to the bags being marked as police evidence. The police controlled the entire process of the drug purchases, and it was through this control that they were able to authenticate that the drugs from each controlled purchase could only have come from Appellant. This assignment of error is overruled.
 ASSIGNMENT OF ERROR NO. 1 {¶ 70} "The trial court erred by over ruling the Defendants Criminal Rule 29 Motions. [sic]"
 {¶ 71} Appellant argues that the state did not provide sufficient evidence to support the convictions for counts one and two of the indictment. Appellant made a Crim.R. 29 motion for acquittal after the close of the state's case, and he believes this motion should have been granted.
 {¶ 72} Crim.R. 29(A) permits the court to acquit a defendant if the evidence is insufficient to sustain conviction on the charged offenses. Whether the state has provided sufficient evidence to satisfy all the elements of its case is a matter of law and is reviewed de novo on appeal. State v. Thompkins (1997), 78 Ohio St.3d 380, 386,678 N.E.2d 541. When reviewing a claim as to the sufficiency of evidence, the relevant inquiry is whether any rational factfinder, viewing the evidence in a light most favorable to the state, could have found the essential elements of the crime proven beyond a reasonable doubt.State v. Dennis (1997), 79 Ohio St.3d 421, 430, 683 N.E.2d 1096, citingJackson v. Virginia (1979), 443 U.S. 307, 319, 99 S.Ct. 2781, 61 *Page 28 
L.Ed.2d 560. The test is one of adequacy and does not involve credibility of the evidence. Thompkins, supra, at 386-387.
 {¶ 73} Appellant contends that he did not actually hand the drugs to the confidential informant on June 6th or 25th of 2003. Appellee correctly points out, though, that the drug trafficking statute does not require proof of hand to hand delivery of drugs, but rather, broadly prohibits selling or offering to sell controlled substances. R.C.2925.03(A)(1). A person may be convicted of drug trafficking even if no drugs are exchanged. State v. Burkhart, 8th Dist. No. 83990,2005-Ohio-502. "[T]he failure to transfer a controlled substance is not an automatic or absolute defense to an indictment alleging that the defendant offered to sell a controlled substance." State v.Patterson (1982), 69 Ohio St.2d 445, 447, 432 N.E.2d 802. There are many facts other than a hand to hand transfer of drugs that may help establish that drugs were knowingly offered for sale: "[f]or example, the dialogue and course of conduct of the accused, as well as the nature of the goods transferred, may be relevant to this determination. Individually, no aspect of any of these examples is the ultimate fact. Collectively, they may or may not prove that the accused knowinglyoffered to sell a controlled substance." Id.
 {¶ 74} Regarding count one, the record shows that the informant called Appellant to make an offer and arrange a meeting place to purchase cocaine; Appellant arrived at the Dairy Mart on 1821 Mahoning Avenue with two other men; and money was exchanged for drugs during the encounter. It is clear that Appellant arranged for the drugs to be sold, even if he did not personally hand the drugs to the *Page 29 
confidential informant. This is sufficient to sustain the conviction. With respect to count two, the record shows that the informant contacted Appellant by phone to purchase drugs at the Party Pantry Supermarket on 2732 Glenwood Avenue. Appellant arrived at the supermarket as previously arranged and money was exchanged for drugs. Officer Patton testified that he personally viewed the transaction. (Tr., p. 125.) This evidence is sufficient to sustain the conviction.
 {¶ 75} Appellant also considers the testimony of the confidential informant to be so untrustworthy and incredible that it undermines all five convictions for drug trafficking. It has already been stated that a review of the sufficiency of the evidence does not involve reviewing issues of credibility. Furthermore, the record establishes that, even without the testimony of the informant, the state provided sufficient evidence to establish the elements of the crime of drug trafficking, and thus, the fact that the informant might not have been the most reliable witness is irrelevant.
 ASSIGNMENT OF ERROR NO. 7 {¶ 76} "The Court erred when it failed to grant Defendant's motion for a new trial and or motion for mistrial."
 {¶ 77} Appellant argues that a mistrial may be granted, pursuant to Crim.R. 33, for irregularity in the proceedings. The decision whether or not to grant a motion for new trial pursuant to Crim.R. 33 is within the sound discretion of the trial court. State v. Schiebel (1990),55 Ohio St.3d 71, 564 N.E.2d 54, paragraph one of the syllabus. Granting a mistrial is an extreme remedy which is only warranted in circumstances where a fair trial is no longer possible and it is required to meet the *Page 30 
ends of justice. State v. Jones (1992), 83 Ohio App.3d 723, 737,615 N.E.2d 713. Mistrial is not properly granted, "merely because some error or irregularity has intervened, unless the substantial rights of the accused or the prosecution are adversely affected." State v. Lukens
(1990), 66 Ohio App.3d 794, 809, 586 N.E.2d 1099.
 {¶ 78} Appellant contends that there were numerous irregularities that required a mistrial. Appellant points to the following events as reasons for a mistrial: Appellant requested new counsel, which was denied; Appellant failed to return to the courtroom after the close of evidence and a warrant was issued for his arrest; Appellant decided, against his counsel's advice, to testify, even though the court had already announced the close of evidence; errors occurred in the chain of evidence; and there was no evidence that Appellant handed any drugs to the informant.
 {¶ 79} Most of these issues have already been resolved in Appellant's other assignments of error and have been determined to be baseless. The single remaining reason Appellant relies on as a basis for a mistrial stems from the odd series of events that occurred after the state rested its case. Appellant's counsel stated that he would also rest without presenting any evidence. (Tr., p. 272.) The trial court held a recess, and when the court reconvened outside the presence of the jury, Appellant could not be found. (Tr., p. 273.) After another recess, Appellant still could not be found, and a warrant was issued for his arrest. All this took place away from the presence of the jury. The trial judge wanted to send the jury home, but did not want to call the jury back into the courtroom without Appellant present. (Tr., p. *Page 31 
275). The parties agreed that the judge should go into the jury room with only the court reporter and without counsel to inform the jurors that they could go home for the evening. (Tr., p. 276.) The judge also informed the jurors that both the state and Appellant had rested their cases. (Tr., p. 278.) Appellant, without explanation, appeared at the courthouse the next morning. He was arrested and brought before the judge so that the trial could continue.
 {¶ 80} At this point, Appellant's counsel asked that the court reopen the trial for Appellant to testify. (Tr., p. 286.) Counsel explained that this was Appellant's personal request and was against the advice of counsel. The judge sustained the motion, and explained to Appellant that the jury did not know anything about the events surrounding Appellant's recent disappearance and arrest for failure to appear. The judge then called the jury back into the courtroom and allowed Appellant to testify. Separate contempt proceedings were later held on December 12, 2005.
 {¶ 81} There does not appear to be anything in this list of events that is worthy of a mistrial. The jury was not made aware of Appellant's strange antics after the state closed it case. Thus, Appellant was not in danger of the jury somehow being swayed by the knowledge that he failed to appear and that a warrant was issued to force him to appear. Appellant made the tactical decision to testify in his own defense, as was his right, and a trial judge is not required to second-guess or question a defendant about his or her decision to testify. State v.Bey (1999), 85 Ohio St.3d 487, 499, 709 N.E.2d 484. Although the events at the end of trial were unusual, Appellant has not raised anything in those events that prejudiced him. *Page 32 
Therefore, the trial court did not abuse its discretion in overruling the motion for a mistrial.
 ASSIGNMENT OF ERROR NO. 4 {¶ 82} "The trial court abused its discretion by finding the Defendant to be in direct criminal contempt and in imposing a penalty of 50 days and beyond the statutory limits of R.C. 2705.05 for a first contempt."
 {¶ 83} As earlier discussed, Appellant failed to appear for the final part of the trial and a warrant was issued for his arrest. Immediately prior to the sentencing hearing the court held Appellant in direct contempt and imposed 50 days of jail time to be served prior to his sentence in the underlying case. (12/12/05 Tr., p. 5.) Appellant contends that his actions constituted indirect criminal contempt. Appellant argues that the trial court was only permitted to impose a penalty of 30 days in jail pursuant to R.C. 2705.02(A)(1).
 {¶ 84} Contempt of court signifies that a court order or rule has been disobeyed or disregarded. In re Parker (1995), 105 Ohio App.3d 31, 34,663 N.E.2d 671. Contempt involves conduct which engenders disrespect for the administration of justice or which tends to embarrass, impede or disturb a court in the performance of its function. Denovchek v.Trumbull Cty. Bd. of Commrs. (1988), 36 Ohio St.3d 14, 15,520 N.E.2d 1362. The law of contempt is intended to uphold and ensure the effective administration of justice, secure the dignity of the court, and to affirm the supremacy of law. Cramer v. Petrie (1994), 70 Ohio St.3d 131,133, 637 N.E.2d 882. Contempt findings and sanctions should not be reversed on appeal unless it is clear *Page 33 
that the trial court abused its discretion. State ex rel. Ventrone v.Birkel (1981), 65 Ohio St.2d 10, 19 O.O.3d 191, 417 N.E.2d 1249. An abuse of discretion consists of more than an error of judgment; it connotes an attitude on the part of the trial court that is unreasonable, unconscionable, or arbitrary. State v. Lessin (1993),67 Ohio St.3d 487, 620 N.E.2d 72.
 {¶ 85} The power of a court to punish contemptuous conduct is derived from its inherent authority as well as from statute. Burt v. Dodge
(1992), 65 Ohio St.3d 34, 35, 599 N.E.2d 693; Zakany v. Zakany (1984),9 Ohio St.3d 192, 9 OBR 505, 459 N.E.2d 870, syllabus. Appellant contends that the trial judge was limited by statute, R.C. 2705.02, and could only have imposed 30 days in jail for a first time contempt offense. Appellant is mistaken in his contention.
 {¶ 86} The Ohio Supreme Court has been wary of legislative attempts to impose limits on a court's ability to punish someone for contempt.Citicasters Co. v. Stop 26-Riverbend, Inc., 147 Ohio App.3d 531,2002-Ohio-2286, 771 N.E.2d 317, ¶ 60, citing Cincinnati v. CincinnatiDist. Council 51 (1973), 35 Ohio St.2d 197, 64 O.O.2d 129,299 N.E.2d 686. In Citicasters, we upheld a contempt fine of $10,000 per day despite the fact that R.C. 2705.02(A) purports to set a cap of $1000 in fines per act of contempt.
 {¶ 87} Given the egregious nature of Appellant's act of contempt, it does not appear unreasonable or arbitrary to impose a 50-day jail term, when the contempt statute would have allowed the court to impose a 30-day jail term for much more *Page 34 
innocuous actions, such as refusing to stand in the presence of the court or refusing to dress in appropriate attire. This assignment of error is baseless and is overruled.
 CONCLUSIONS {¶ 88} Appellant is correct that two of the five drug trafficking convictions should be dismissed and vacated because the state failed to produce for trial the lab technicians responsible for two of the cocaine test reports that were used. Although it does not appear that the state intentionally tried to deceive Appellant, it is clear from the record that Appellant properly filed a motion demanding that the state produce at trial all the lab technicians who tested the five cocaine samples, and the state failed to do so. The test reports were necessary in order to establish the existence and weight of cocaine in each drug trafficking charge. When the reports are invalidated because of the absence of the lab technicians, the charges cannot stand. The convictions on counts one and four are reversed and the sentences vacated. Appellant was given a one-year prison term on count one and a two-year prison term on count four. These terms are hereby deducted from his aggregate prison term of eleven years, leaving a total remaining prison term of eight years. The remaining assignments of error are without merit, and all other convictions and sentences, including the conviction and sentence for contempt of court, imposed by the Mahoning County Court of Common Pleas, are affirmed.
Donofrio, J., concurs.
 Vukovich, J., concurs. *Page 1