[Cite as *State v. McDaniel*, 2023-Ohio-3593.]

# IN THE COURT OF APPEALS OF OHIO

SEVENTH APPELLATE DISTRICT
JEFFERSON COUNTY

STATE OF OHIO,

Plaintiff-Appellee,

v.

BRANDON W. McDANIEL,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
Case No. 22 JE 0013

---

Criminal Appeal from the
Court of Common Pleas of Jefferson County, Ohio
Case No. 21-CR-56

**BEFORE:**
Cheryl L. Waite, Carol Ann Robb, Mark A. Hanni, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. Jane M. Hanlin*, Jefferson County Prosecutor and *Atty. Bernard C. Battistel*, Assistant Prosecutor, Jefferson County Prosecutor's Office, 16001 State Route 7, Steubenville, Ohio 43952, for Plaintiff-Appellee

*Atty. Eric M. Reszke*, 100 North 4th Street, Suite 810, Sinclair Building, Steubenville, Ohio 43952, for Defendant-Appellant

Dated: September 28, 2023

---

**WAITE, J.**

{¶1}  Appellant appeals a July 29, 2022 judgment entry of the Jefferson County Court of Common Pleas convicting him on a single count of failure to comply with an order or signal of a police officer.  Appellant argues that the trial court erroneously denied his motion to dismiss the matter based on multiple speedy trial grounds.  Because Appellant has not demonstrated prejudice, his argument is without merit and the judgment of the trial court is affirmed.

<u>Factual and Procedural History</u>

{¶2}  Due to a plea agreement, the details surrounding this incident are sparse. Further complicating the factual history is the existence of what appears to be two different cases arising from the same incident.  However, the trial court provided limited details of the incident when accepting Appellant's plea of no contest.

{¶3}  On February 21, 2021, Appellant was operating a vehicle on an unnamed road in Dillonvale and failed to stop at a stop sign.  Two local police officers were sitting, stationary, nearby and began pursuit of Appellant's vehicle by activating their siren and emergency lights.  The officers engaged in a high-speed chase with Appellant, reaching speeds of up to seventy miles per hour.  The officers pursued Appellant at high rates of speed for approximately five or six minutes before Appellant, while weaving in and out of traffic, lost control of his vehicle and crashed into a guardrail.  When officers approached the vehicle, Appellant was sitting in the driver's seat unconscious.

{¶4}  Appellant was arrested two days later, on February 23, 2021.  The record does not explain the gap in time that occurred between the incident and the arrest, or the

location of Appellant's arrest.  However, the parties agree that Appellant was arraigned the day after arrest, on February 24, 2021.

{¶5}   The state filed a motion to voluntarily dismiss the charges, which the trial court granted on March 3, 2021.  The record is silent as to the reason for this dismissal and whether anyone informed Appellant that new charges would be filed at a later date. The trial court file provided to this Court on appeal does not include any documentation regarding Appellant's first indictment or the dismissal of those charges.  Thus, we rely on the dates provided in a stipulation filed by the parties pursuant to a later, second, motion to dismiss.

{¶6}   Charges were refiled against Appellant by the state and Appellant was indicted on April 7, 2021.   The Jefferson County Sheriff's Department requested assistance from the Tuscarawas County Sheriff's Department in serving Appellant with the new indictment.  However, on April 8, 2021, a representative of the Tuscarawas County Sheriff's Department informed Jefferson County that Appellant did not live in that county, but that he "lives in Martin [sic] Ferry area[.]  He works at a gas station in Colerain." (4/8/21 Summons On Indictment.)   Both Martins Ferry and Colerain are located in Belmont County, adjacent to Jefferson County.  On May 24, 2021, the Jefferson County Sheriff's Department obtained a warrant for Appellant's arrest.  However, it appears that the Jefferson County Sheriff's Department undertook no efforts to attempt to locate Appellant, whether in Martins Ferry, Colerain, or some other location.  The state conceded at oral argument that only three gas stations operate in Colerain, which is a small town.

{¶7}   On April 7, 2022, almost a year later, Appellant was arrested pursuant to the warrant and was arraigned the following day.  A series of pre-trial motions were filed

by both sides, including: a request for discovery, a motion for bond reduction, a request for reciprocal discovery, and a motion to continue. Appellant's motion for reduced bond was premised on the fact that, but for law enforcement's failure to attempt to locate him for a year after his indictment, he may have been released on his own recognizance instead of being held on bail. The court sustained the motion and lowered Appellant's bond, however, it appears Appellant was unable to post even the modified bond.

{¶8} On June 7, 2022, Appellant's counsel filed a motion to dismiss the charges based on speedy trial grounds. However, counsel did not support the motion with any kind of memorandum as is typically provided to the trial court in these matters. At some time later, Appellant's counsel did provide the court with a stipulated timeline of Appellant's incarceration, but no caselaw or accompanying arguments were ever filed. According to the bare bones stipulation, Appellant was incarcerated as follows:

| Date | Event | Jail | Length |
|------|-------|------|--------|
| 2/23/21 | Arrested | Yes | 0 Days |
| 2/24/21 | Arraigned | Yes | 1 Day |
| 3/3/21 | Case Dismissed | Yes | 6 Days |
| 4/5/22 | Arrested | Yes | 0 Days |
| 4/12/22 | Discovery | Yes | 7 Days |
| 5/19/22 | Motion for Bond | Yes | 37 Days |
| 5/23/22 | Discovery | Yes | 4 Days |
| 6/6/23 | Motion to Continue | Yes | 14 Days |
| 7/5/23 | Motion to Dismiss | Yes | 29 Days |
| | | Total = | 98 Days |

(7/20/22 Joint Stipulation.)

{¶9} On July 20, 2022, the court held a hearing on Appellant's motion to dismiss. The court was informed by the parties through joint stipulation that, as of the date of the hearing, Appellant had been jailed for 112 days on the charges, with a trial date scheduled for July 26, 2022, six days later. At hearing, counsel appeared unprepared, and while he argued that Appellant believed his case was similar to *State v. Hayman*, 3rd Dist. Seneca No. 13-09-22, 2010-Ohio-1264, counsel admitted that he did not attempt to locate or read this case prior to the hearing. The following discussion occurred between the court and counsel:

> The Court: Do you want me to wait and see what case he's going to give you? I can't imagine any case he's going to give you that's going to affect this.
>
> Mr. Martello: He's telling me State versus Hayman, your Honor. It doesn't matter to me. If you'd like to rule, you can rule.

(Motion to Dismiss Hrg., pp. 8-9.)

{¶10} Counsel said Appellant had recited the facts of the case to him. Although it was clear that Appellant had discussed this matter with counsel well in advance of the hearing, counsel claimed that, although the facts of the case did seem on point, he never read *Hayman* and could only speculate as to the reasons for the *Hayman* court's decision. (Motion to Dismiss Hrg., p. 9.) The court issued a judgment entry later that same day denying Appellant's motion to dismiss.

{¶11} On July 25, 2022, Appellant signed "a change of plea" form that simply stated he was changing his plea from "not guilty" to "no contest." A formal Crim.R. 11 form is not in the record. On the same date, the court held a joint plea and sentencing hearing. Appellant expressed his disappointment in his counsel's failure to pursue aspects of his case, particularly the viability of a speedy issue.

{¶12} On July 29, 2022, the trial court imposed a jointly recommended sentence of nine months in jail with credit for 116 days served. Appellant's driver's license was suspended for five years and he was informed he is subject to a mandatory postrelease control term of one to three years. Appellant timely appealed the court's sentencing entry.

{¶13} On January 24, 2023, we *sua sponte* acknowledged that the state's deadline to file a brief in this matter had expired almost a month prior and provided the state another seventeen days to file a brief. Based on the confusing nature of this record we set the matter for oral argument.

{¶14} As no stay was requested in this matter, we note that Appellant has completely served his jail sentence. However, this matter is not moot as Appellant is serving his mandatory term of postrelease control.

ASSIGNMENT OF ERROR

THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY
OVERRULING THE APPELLANT'S MOTION TO DISMISS.

{¶15} Appellant actually raises a bifurcated argument under his sole assignment. First, he argues that unreasonable delay by law enforcement caused him to be arrested a year after his indictment issued. As a result, he not only faced uncertainty during this

period but also suffered harm by being incarcerated following arrest, as he contends another offender would typically be released on his own recognizance for a similar offense. Second, he argues that several tolling events were delayed unreasonably by the state and should have resulted in dismissal on speedy trial grounds.

{¶16} In response, the state focuses on the fact that Appellant was not jailed from the time he was indicted (April 7, 2021) until he was ultimately arrested (April 5, 2022), thus this time cannot be charged against the state in any statutory speedy trial analysis. The state compares the matter to cases where a person is under investigation, but is not charged, in a criminal proceeding. However, the state has failed to directly respond to Appellant's constitutional argument.

{¶17} Ohio recognizes both a constitutional and a statutory right to a speedy trial. *State v. King*, 70 Ohio St.3d 158, 161, 637 N.E.2d 903 (1994). The Sixth Amendment to the United States Constitution provides:

> In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defen[s]e.

{¶18} In addition to the Sixth Amendment, Ohio provides a statutory speedy trial right. R.C. 2945.73(B) provides: "Upon motion made at or prior to the commencement of

trial, a person charged with an offense shall be discharged if he is not brought to trial within the time required by sections 2945.71 and 2945.72 of the Revised Code." "A person against whom a charge of felony is pending: * * * (2) Shall be brought to trial within two hundred seventy days after the person's arrest." R.C. 2945.71(C)(2). "For purposes of computing time * * * each day during which the accused is held in jail in lieu of bail on the pending charge shall be counted as three days." R.C. 2945.71(E).

{¶19} Review of a trial court's decision regarding a motion to dismiss based on a violation of the speedy trial provisions involves a mixed question of law and fact. *State v. High*, 143 Ohio App.3d 232, 757 N.E.2d 1176 (7th Dist.2001), citing *State v. McDonald*, 7th Dist. Nos. 97 C.A. 146, 97 C.A. 148, 1999 WL 476253 (June 30, 1999). The trial court's findings of fact are given deference if supported by competent, credible evidence. *Id.* However, a reviewing court must independently review whether the trial court properly applied the law to the facts of the case. *Id.* Further, an appellate court must strictly construe the relevant statutes against the state. *Id.*, citing *Brecksville v. Cook*, 75 Ohio St.3d 53, 57, 661 N.E.2d 706 (1996).

{¶20} While the state focuses solely on statutory speedy trial law, Appellant's arguments are far more wide ranging and complicated. He not only raises statutory speedy trial issues, but also alleges constitutional violations of his speedy trial rights.

{¶21} At the outset, we again note that this record is incomplete. We cannot ascertain whether this matter has two separate case numbers, or whether certain documents are simply missing from the file. Among the documents clearly missing are the original indictment and the dismissal of the original charges, including the entry of dismissal and any other documents that might have existed prior to dismissal. Also

missing are documents pertaining to the second indictment showing the date of arrest and any effort made to locate and serve Appellant after learning that he possibly resided in Martins Ferry and worked at a gas station in Colerain. It is Appellant's burden to ensure the record on appeal is complete, or at least contains sufficient information to allow for the appropriate review of the lower court proceedings. In the interest of justice, we will review the matter as thoroughly as possible given the deficiencies that exist.

{¶22} The parties do not dispute that absent tolling events the state had 90 days to bring Appellant to trial following arrest pursuant to the triple count provision. The speedy trial clock begins to run the day after a defendant is arrested. *State v. Brown*, 7th Dist. Mahoning No. 03-MA-32, 2005-Ohio-2939. The parties appear to agree Appellant's first arrest counts towards his speedy trial calculation. Appellant was arrested for the first time on February 23, 2021. Thus, the speedy trial clock began to run on February 24, 2021. Although the record is unclear, it appears from the parties' stipulation that Appellant was released on March 3, 2021 when the trial court sustained the state's motion to dismiss the charges. According to the stipulation, it appears Appellant was arrested for the second time on April 5, 2022, and was incarcerated throughout the remainder of the proceedings.

{¶23} In *Hayman,* the appellant was arrested and eventually released on his own recognizance. *Id.* at ¶ 3. Later, he was indicted based on the conduct for which he was arrested. Law enforcement made four attempts to serve him with the indictment at his residence but failed. *Id.* at ¶ 17. The state then secured a bench warrant. The state also successfully moved for a tolling of the speedy trial time to allow service of the indictment. However, after the state obtained the tolling order, law enforcement apparently made no

effort to serve either the indictment, the tolling order, or to execute the arrest warrant. On appeal, the Third District held that any tolling of the speedy trial time must be reasonable, and failure to attempt service of a document on a defendant for 114 days was not reasonable. *Id.* at ¶ 27. Thus, law enforcement's actions (or inaction) ran afoul of the appellant's statutory speedy trial rights.

**{¶24}** *Hayman* is distinguishable from the instant matter in several respects. The *Hayman* court clearly relied on the existence of a speedy trial order in that case in reaching its decision. The appellant's charges were pending at the time of his release without bond and appellant had apparently asserted his right to a speedy trial. No such order existed in the instant case. It is acknowledged that the charges originally filed in the instant matter were dismissed and then refiled approximately one month later. The record is silent as to whether Appellant had reason to believe his charges would be refiled.

**{¶25}** Unlike *Hayman,* clearly the court in this matter did not order a continuance tolling speedy trial time. This is so because when Appellant in this matter was released, no charges against him were pending. Since a speedy trial analysis focuses on the time that has passed since an arrest on criminal charges until time of trial on these charges, it does not appear that Appellant can automatically apply the time that elapsed between his first arrest and his second arrest pursuant to his second indictment towards his speedy trial count. The question remains whether the state can avoid a speedy trial issue altogether where a lengthy, and possible unnecessary, delay exists between an indictment and an arrest.

**{¶26}** We have previously acknowledged that "the rule in Ohio is that a defendant may only assert preindictment speedy trial rights if the state has actually initiated its

criminal prosecution or has issued an official accusation prior to indictment." *State v. Davis*, 7th Dist. Mahoning No. 05 MA 235, 2007-Ohio-7216, ¶ 23, citing *Selvage*, *supra*, 80 Ohio St.3d at 466, 687 N.E .2d 433; *State v. Luck*, 15 Ohio St.3d 150, 153, 472 N.E.2d 1097 (1984). It appears that this is satisfied, as Appellant had previously been indicted and arrested, although the charges were dismissed and Appellant was set free. We have also recognized the Ohio Supreme Court's holding that "[c]onsidering the basic purposes of the constitutional right to a 'speedy trial,' we conclude that such constitutional guarantees are applicable to unjustifiable delays in commencing prosecution as well as to unjustifiable delays after indictment." *Id.* at ¶ 24, citing *State v. Meeker* 26 Ohio St.2d 9, 16-17, 268 N.E.2d 589 (1971).

**{¶27}** The applicable law is more thoroughly addressed within a United States Supreme Court case, *Barker v. Wingo*, 407 U.S. 514, 33 L.Ed.2d 101, 92 S.Ct. 2182, 2192 (1972). The issue arose when the state elected to try what it deemed to be the stronger case against the appellant's codefendant before attempting to try the appellant's much weaker case. *Id.* at 516. After the conclusion of codefendant's trial, a series of continuances, all requested by the state, delayed the appellant's trial for five years. The appellant was then subjected to two separate trials involving multiple victims, and ultimately convicted and sentenced to life in prison. *Id.* at 518.

**{¶28}** The *Barker* Court considered and declined to adopt several suggested bright line rules. The Court explained that there are troubling consequences for both parties and the public resulting from both a lengthy trial process and also from a hurried trial. More importantly, the court explained that "[w]e cannot definitively say how long is too long in a system where justice is supposed to be swift but deliberate." *Id.* at 521. With

this in mind, the Court came to the conclusion that "[a] balancing test necessarily compels courts to approach speedy trial cases on an *ad hoc* basis. We can do little more than identify some of the factors which courts should assess in determining whether a particular defendant has been deprived of his right. Though some might express them in different ways, we identify four such factors: length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Id.* at 530.

{¶29} In reviewing these factors, the *Barker* Court ultimately determined, in a close decision, that the delay was extraordinary. While the Court acknowledged that some of the delay attributed to the state was appropriate and acceptable, "a good part of that period was attributable to the Commonwealth's failure or inability to try [the appellant] under circumstances that comported with due process." *Id.* at 534. However, this did not end the analysis. The *Barker* Court held that even this extraordinary delay did not rise to the level of a violation of the appellant's speedy rights because the record demonstrated that he did not want to be timely tried, mostly due to his desire to gamble on his codefendant's acquittal. The Court noted that he did not contest any of the continuances until after the codefendant's trial resulted in a conviction.

{¶30} The Court cautioned that its decision was governed by the applicable facts, which were unique, and that "[t]here may be a situation in which the defendant was represented by incompetent counsel, was severely prejudiced, or even cases in which the continuances were granted *ex parte*." *Id.* at 536.

*Length of Delay*

{¶31} Turning to these four factors, in regard to the first, the length of delay, the *Barker* Court noted that it is "to some extent a triggering mechanism. Until there is some

delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." *Id.* at 530. The Court noted that "the length of delay that will provoke such an inquiry is necessarily dependent upon the peculiar circumstances of the case. To take but one example, the delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge." *Id.* at 530-531. This factor is looked at as a threshold issue.

{¶32} In the matter before us, the contested delay is a roughly one-year period between the filing of the second indictment and Appellant's arrest. We note the parties stipulated there was also a delay of more than a month between the first and second indictments, during which Appellant was jailed for only a small amount of time.

{¶33} The first incident at issue occurred on February 21, 2021. Law enforcement did not arrest Appellant until February 23, 2021. We have no way of knowing why there was a two-day delay. If Appellant was free to go following the incident and law enforcement was able to quickly locate him for the arrest, it may provide some support for his argument that the delay in locating him was unreasonable. However, Appellant was unconscious after striking the guardrail. It is possible he was hospitalized, thus somewhat hampering his immediate arrest.

{¶34} Regardless, it appears that Appellant was jailed from the time of his first arrest until the court granted the state's motion to dismiss the charges. Again, the parties stipulated that the first charges were dismissed on March 3, 2021.

{¶35} The state secured a second indictment on the same charges on April 7, 2021. Appellant relies on the time between dismissal of the first indictment and filing of the second in his timeliness argument: approximately one and one-half months. On April

8, 2021, the Tuscarawas County Sheriff's Department informed the Jefferson County Sheriff's Department that Appellant did not live in their jurisdiction, so they could not perfect service of the second indictment on Jefferson County's behalf. A Tuscarawas representative alerted Jefferson County to the possibility that Appellant lived in the Martins Ferry area and worked at a gas station in the town of Colerain. Again, the state conceded at oral argument that only three gas stations operate in the small town of Colerain.

{¶36} Similar to *Hayman,* there is no documented evidence that law enforcement took any action to further locate Appellant. Instead, law enforcement obtained an arrest warrant on May 24, 2021, approximately one and one-half months after receiving the tip from Tuscarawas as to where Appellant might be found. At this point, approximately three months had passed since Appellant's original arrest. Ultimately, Appellant was arrested during a traffic stop on April 5, 2022, a year after the second indictment was filed and almost a year after obtaining the arrest warrant. There is no evidence that Appellant attempted to evade prosecution.

{¶37} Several tolling events occurred after Appellant's arraignment; motions for discovery and a motion to reduce Appellant's bond. Interestingly, counsel requested bond because "the summons that was issued was sent to an incorrect address in Tuscarawas County, which he has not lived at for over four years. Had [Appellant] been served at his correct address, which will be submitted to the Court at the hearing on this matter, the [Appellant] would have appeared on his own recognizance and been entitled to such bond." (5/19/22 Motion for Bond Reduction.) It is unclear whether the court agreed with Appellant's supposition, but the court granted the motion. However, it

appears that Appellant was unable to post the modified bond and remained jailed on the charges.

**{¶38}** Appellant later requested a continuance to clear discovery issues and pursue a potential resolution of the case. On July 5, 2022, counsel filed a one-page bare-bones motion to dismiss based on speedy trial grounds that included no caselaw or argument. Counsel did not assist the court with any argument or evidence at the hearing, either.

**{¶39}** We have previously reviewed a similar case in *Davis*, *supra*. In that case, we discussed *Doggett v. United States*, 505 U.S. 647, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992). *Doggett* involved a delay of eight and one-half years between the indictment and subsequent arrest, where attempts to serve the indictment had been unsuccessful because the defendant had fled the country. The *Doggett* Court held that the delay was presumptively prejudicial, triggering a complete *Barker* analysis. *Davis* at ¶ 30. We distinguished *Davis* on the grounds that "presumptive prejudice only begins to arise when the delay between indictment and arrest approaches one year" and *Davis* involved a delay of only six months. *Id.* at ¶ 31. "Generally, a delay that *approaches* one year is presumptively prejudicial." (Emphasis added) *State v. Slater*, 8th Dist. Cuyahoga No. 111536, 2023-Ohio-608, ¶ 17.

**{¶40}** In the instant matter, the time between Appellant's indictment and arrest amounted to just two days shy of one year. (Second indictment on April 7, 2021 and arrest on April 5, 2022.) Again, the length of delay is a threshold issue. Only if the delay is unreasonable do we proceed with an analysis of the other *Barker* factors. The one-year delay here appears sufficient to trigger a full *Barker* analysis.

*Reason for Delay*

**{¶41}** Since the threshold issue appears to have been met, we must analyze the significance of the second factor, the reason for the delay. The court explained that a reason such as the state's attempt to hamper the defense should weigh heavily in a defendant's favor, whereas negligence or an overcrowded court docket should be afforded less weight, but ultimately must still be considered. *Barker* at 527. The court rationalized that "the ultimate responsibility for such circumstances must rest with the government, rather than with the defendant." *Id.* at 531. Based on the record before us, it appears that law enforcement took no efforts to locate Appellant, despite having information as to where he may possibly be found.

*Assertion of Right*

**{¶42}** The third factor is whether the defendant asserted his right to a speedy trial. While the court cautioned that a defendant need not specifically raise that right to be successful in a speedy trial challenge, it is a factor to consider. *Id.* 531-532.

**{¶43}** Again, we are unable to determine whether Appellant was aware that criminal charges would be refiled after the dismissal of the initial charges. Once he was arrested the second time, it is very clear that Appellant sought to raise his speedy trial rights, although his counsel was less than enthusiastic about supporting his assertion. Nonetheless, clearly Appellant raised speedy trial issues.

*Prejudice*

**{¶44}** The fourth and final factor is the prejudice caused to the defendant. This appears to be the most important factor. In a lengthy analysis, the *Barker* Court essentially held that courts are to consider three interests: (1) prevention of "oppressive

pretrial incarceration," (2) the ability to minimize the anxiety and concern of the defendant, and (3) the ability to limit the potential impairment of the defense. *Id.* at 532. The court noted that "even if an accused is not incarcerated prior to trial, he is still disadvantaged by restraints on his liberty and by living under a cloud of anxiety, suspicion, and often hostility." *Id.* at 533.

{¶45} The trial court never addressed Appellant's assertion that he would have been released on his own recognizance pending trial if he had been timely served. Regardless, Appellant was incarcerated approximately four months, counting time served on the original indictment that was dismissed, and the time he was incarcerated on the second indictment. We note that *Barker* stated that even time a defendant is not actually incarcerated may be relevant when determining the reasonableness of a pretrial delay. However, this record contains nothing to suggest *Barker's* "oppressive pretrial incarceration."

{¶46} As to Appellant's anxiety and concern, the state alleges that he was under no additional stress when compared to any other person under investigation. This assertion is somewhat misleading. Appellant had actually once been arrested, although he was released when his indictment was dismissed. While the record is silent as to whether Appellant expected to be reindicted after the dismissal of the first indictment, his liberty would have been more in question than a person who may or may not face criminal charges subsequent to an investigation, if Appellant had known he was subject to further charges or to being recharged on the original charge. The record is devoid of any such evidence, however, and the dismissal of the original indictment may have equally caused Appellant to believe he was free of any cloud.

{¶47} The charge (failure to comply) was not likely to require a complicated investigation or trial. In fact, a trial probably would not have exceeded more than one day. The reason for the delay had nothing to do with a state investigation, complex issues, or an attempt by Appellant to elude prosecution. Instead, it appears that law enforcement simply took no steps to locate Appellant for more than one year, even though they had information which may have led to arrest much earlier. However, there was no showing, or even suggestion of any impairment to the defense by any delay, here.

{¶48} This record then, is silent as to actual prejudice. Appellant has not shown, or even alleged, that he was aware he would, or even could, be reindicted and that new charges were possible or forthcoming. Appellant does not allege he was subject to any cloud or concern as a result of delay, and does not allege his defense suffered from the delay. Appellant has provided no specific instance of actual prejudice. He raises mere speculation that he would have turned himself in had he known earlier that a warrant was pending and that he would then have been released without bond, but we cannot conclude that this conjecture is accurate, nor that it amounts to an allegation, let alone proof, of prejudice.

*General Analysis*

{¶49} This record contains insufficient facts to support Appellant's contentions regarding his pretrial delay and trial counsel failed to preserve several arguments for appeal. While appellate counsel attempted to allege prejudice, even when conducting a plain error analysis the record contains no actual facts that would lead to a colorable argument demonstrating prejudice. We may not speculate or extrapolate based on the mere suggestions of appellate counsel. While law enforcement could have done more to

effect Appellant's arrest on the reindictment, this record reflects Appellant was able to live his life with no, or very little restriction or cloud. His delayed apprehension caused no actual prejudice.

Conclusion

{¶50} Appellant argues that the trial court erroneously denied his motion to dismiss this case based on speedy trial grounds. While his arrest on the second indictment does appear to have been delayed unreasonably, Appellant has not demonstrated actual prejudice. His argument is without merit and the judgment of the trial court is affirmed.

Robb, J. concurs.

Hanni, J. concurs.

[Cite as *State v. McDaniel*, 2023-Ohio-3593.]

———————————

For the reasons stated in the Opinion rendered herein, Appellant's assignment of error is overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Jefferson County, Ohio, is affirmed.  Costs waived.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**